**Vernalee BROCK and the Regional Transportation District,
Petitioners,**

v.

**Travis NYLAND, Respondent.**

No. 96SC582.

Supreme Court of Colorado,
En Banc.

April 13, 1998.

---

Regional Transportation District, Roger C. Kane, Rolf G. Asphaug, Denver, for Petitioners.

Benjamin Silva III & Associates, P.C., Robert K. Reimann, Lakewood, for Respondent.

Geoffrey T. Wilson, Denver, for Amicus Curiae Colorado Municipal League.

Brian J. Lampert, Englewood, for Amicus Curiae Colorado Trial Lawyers Association.

Gale A. Norton, Attorney General, Martha Phillips Allbright, Chief Deputy Attorney General, Richard A. Westfall, Solicitor General, Garth C. Lucero, Deputy Attorney General, Timothy R. Arnold, Deputy Attorney General, Civil Litigation Section, Tort Litigation Section, Hall & Evans, L.L.C., Thomas J. Lyons, Denver, for Amici Curiae State of Colorado and Colorado Counties, Inc.

Office of the City Attorney, City of Aurora, Charles H. Richardson, Julia A. Bannon, Aurora, for Amicus Curiae City of Aurora.

Justice SCOTT delivered the Opinion of the Court.

In this case, we must decide whether the filing of notice with the claims department of the Regional Transportation District (RTD) satisfies the statutory requirement that "notice shall be filed with the governing body of the public entity or the attorney representing the public entity" as set forth in section 24–10–109(3), 7 C.R.S. (1997). Relying on the plain language of the statute, we conclude that it does not.

Our order granting certiorari in *Nyland v. Brock*, 937 P.2d 806 (Colo.App.1996) set forth several issues and requires that we decide "[w]hether the court of appeals erred in holding that 'a claimant need only substantially comply with the section 24–10–109(3), 10A C.R.S. (1996 Supp.), requirement that notice be sent to the public entity's governing body or legal counsel.'" By our judgment today, we reject the court of appeals' reliance upon

a substantial compliance standard and reverse.[1] Instead, we hold that section 24–10–109(3) requires filing with "the governing board" or "the attorney" and by its plain language does not contemplate compliance otherwise.

## I.

### A.

The facts of this legal dispute are not in question. On March 23, 1993, while crossing the intersection of 11th Avenue and Peoria Street, respondent Travis Nyland, then of Norfolk, Nebraska, was struck and injured by a bus operated by petitioner RTD.[2] Shortly thereafter, Nyland retained the services of an attorney to seek personal injury payment (PIP) benefits and, in addition, to pursue this negligence action. On April 5, 1993, Nyland's attorney sent a letter to Armonde Hainesworth of the claims department of RTD (claims department) providing notice that he represented Nyland for "both the liability and PIP issues" related to the accident. Further correspondence indicated that Nyland was seeking payment of medical expenses pursuant to the no-fault insurance provisions of the Colorado Accident Reparations Act, §§ 10–4–701 to –725, 3 C.R.S. (1997).

Through his attorney, Nyland sent a total of five letters to the RTD claims department from April through June 1993. Among other things, the letters provided the following information: (1) that the attorney represented Nyland; (2) the address and telephone numbers for Nyland and his attorney; (3) a completed accident questionnaire with the time, place, and a description of the accident; (4) a description of Nyland's injuries; and (5) the amount of Nyland's claim for medical expenses and reimbursement for lost income. The letters described Nyland's injuries in detail, included medical records, and supplied information to support his lost wages claim.

The RTD claims adjuster replied to the letters in the normal course of his assigned duties at RTD,[3] which included requesting "documentation to support the extent of treatment for Mr. Nyland." The various letters, including five from Nyland's attorney, never mentioned litigation or court proceedings, anticipated or otherwise. Instead, the correspondence focused upon Nyland's injuries, treatment, and the costs of the same, as well as lost wages. The claims adjuster did not forward the letters nor any information regarding Nyland's claims to the RTD governing board or its attorney, instead treating the matter as he did other PIP and related claims.[4]

In any event, RTD paid Nyland's medical expenses and PIP benefits, reimbursing him for certain medical costs related to his injuries. However, RTD did not pay Nyland's

1. We granted certiorari on the following issues:

(1) Whether the court of appeals erred in holding that "a claimant need only substantially comply with the section 24–10–109(3), 10A C.R.S. (1996 Supp.), requirement that notice be sent to the public entity's governing body or legal counsel";·

(a) Whether the court of appeals erred in citing *Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996), for the proposition that a claimant need only substantially comply with the statutory requirement that notice be sent to the public entity's governing body or attorney;

(b) Whether the court of appeals erred in expressly declining to follow *Aetna Casualty & Surety Co. v. Denver School District No. 1,* 787 P.2d 206 (Colo.App.1989);

(c) Whether the court of appeals erred in failing to recognize that in *East Lakewood Sanitation District v. District Court,* 842 P.2d 233 (Colo. 1992), the supreme court held that "[t]he presence of the word 'shall' . . . dictates" mandatory, strict compliance with the terms of the statute;

(2) Whether the court of appeals erred in placing on petitioners Brock and Regional Transportation District the burden to *disprove* substantial compliance;

(3) Whether the court of appeals erred in finding that respondent Nyland had substantially complied with the notice requirements of section 24–10–109(3), 10A C.R.S. (1988).

2. An individual petitioner before us is Vernalee Brock, an RTD employee and the operator of the bus. For purposes of brevity, references to RTD shall include Brock.

3. The claims adjuster was not then, nor was he ever, authorized to receive notices for the RTD governing board or its attorney.

4. In fact, the claims adjuster ultimately forwarded information regarding the accident to the RTD governing board, but this occurred well after the 180–day notice period under section 24–10–109(1) had expired and after the complaint was filed.

claim for pain and suffering, lost wages, future medical expenses, and future income, all of which he seeks through this litigation.

### B.

On December 15, 1993 (267 days after the injury), Nyland's attorney filed a notice of claim with RTD's attorney and its governing body. On December 30, 1994, Nyland filed this action against RTD in the Denver District Court (trial court). The complaint alleged permanent disability, physical pain and suffering, future medical treatment, past and future pain and anguish, loss of future income, permanent disfigurement, and permanent impairment of earning capacity. These injuries were not covered by the claims set forth in the letters Nyland sent to the RTD claims adjuster.

RTD moved to dismiss the suit for failure to comply with the notice provisions of the Colorado Governmental Immunity Act (GIA), which state that written notice must be given within "one hundred eighty days after the date of the discovery of the injury," § 24–10–109(1), 7 C.R.S. (1997), and that, "notice shall be filed with the governing body of the public entity or the attorney representing the public entity," § 24–10–109(3).

The trial court denied the motion to dismiss, finding that "the plaintiff has substantially complied with the notice provision of C.R.S. § 24–10–109" because "[t]he plaintiff's attorney sent five letters to the Claims Department of RTD within 180 days of the accident." Pursuant to section 24–10–108, 7 C.R.S. (1997), RTD appealed the trial court's order as "a final judgment ... subject to interlocutory appeal."

The court of appeals affirmed. Relying upon *Regional Transportation District v. Lopez*, 916 P.2d 1187 (Colo.1996), and *Woodsmall v. Regional Transportation District*, 800 P.2d 63 (Colo.1990), the court of appeals held that "a claimant need only substantially comply with the § 24–10–109(3) requirement that notice be sent to the public entity's governing body or legal counsel." *Nyland v. Brock*, 937 P.2d 806, 809 (Colo.App.1996). The court of appeals further held that "based upon the letters he sent to RTD's claims

adjuster," Nyland had filed timely notice with the RTD governing body or its attorney. *See id.*

### II.

### A.

Under the GIA, a person seeking recourse against a public entity, such as RTD, must notify that entity of any claims against it within 180 days of discovery of the injury. § 24–10–109. Subsection (1) of section 24–10–109 provides that any person asserting a claim under the GIA "shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury." *Id.* The place for filing the notice required by section 24–10–109 is set forth in subsection (3), which indicates that when a claim is against the state or an employee thereof, notice shall be filed with the attorney general. As relevant here, the statute further provides:

> If the claim is against any other public entity or an employee thereof, the notice shall be filed with the governing body of the public entity or the attorney representing the public entity.

§ 24–10–109(3).

### B.

▮ The court of appeals concluded that a plaintiff only needs to achieve substantial compliance with the notice requirement of section 24–10–109(3) and, hence, may meet the notice requirement without filing notice with the governing body or attorney. We disagree, and hold that section 24–10–109(3) of the GIA, by its plain language, anticipates that a litigant against a public entity will file notice with one of two persons. Section 24–10–109(3) identifies the specific persons with whom the notice of claim must be filed. Thus, unless the claim is filed with one of those two persons, a plaintiff may not proceed to judgment against any public entity.

▮ It is axiomatic that when interpreting a statute, we must give effect to the intent of the legislature. *See Dawson v. Reider*, 872 P.2d 212, 214 (Colo.1994). To discern that intent, we look to the language

used by the General Assembly in the statute. If the words used are plain and unambiguous, our task is accomplished by giving effect to the commonly accepted meaning of the words used. *See Regional Transp. Dist. v. Voss,* 890 P.2d 663, 667 (Colo.1995).

The plain language of section 24–10–109(3) specifically and unambiguously requires that "the notice shall be filed with *the governing body* of the public entity *or the attorney* representing the public entity." *Id.* (emphasis added). As the plain language is clear and unambiguous, we cannot interpret this provision to permit the filing of a notice of claim with any person or entity other than those set forth in the statute, *i.e.,* "the governing body of the public entity or the attorney representing the public entity." *See Van Waters & Rogers, Inc. v. Keelan,* 840 P.2d 1070, 1076 (Colo.1992). In essence, the nature or extent of compliance mandated by the statute inheres from the plain language of section 24–10–109(3).

The legislative purpose in passing section 24–10–109(3) was to recognize and insure that the "governing body" or its "attorney" be directly involved, advised, and notified of potential litigation. Consistent with this intention, the legislature used mandatory language: "the notice *shall* be filed with the public entity's governing body or attorney," as opposed to less restrictive language. The use of the term "shall" with such specifically identified persons militates against a construction that would recognize substantial compliance, a result that does not comport with the plain language. *See East Lakewood Sanitation Dist. v. District Court,* 842 P.2d 233, 235 (Colo.1992) ("Where the word 'shall' is used in a statute, it is presumed to be mandatory.") (quoting *Sargent Sch. Dist. v. Western Servs., Inc.,* 751 P.2d 56, 60 (Colo. 1988)). While we are mindful that the term "shall" also appears in section 24–10–109(2), which we held permitted substantial compliance, *see Woodsmall,* 800 P.2d at 69, it is the use of the term "shall" *with* the specific identified persons of the section that controls our construction of subsection (3). Like the language in section 24–10–109(1), section 24–10–109(3) is definite and certain, whereas the language in section 24–10–109(2) is not. For example, in section 24–10–109(1), the filing "shall" occur "within one hundred eighty days." The definite nature of the period makes it unquestionable that a claimant can make a factual decision to comply, and a court can then determine whether a filing is within that time period. Similarly, whether notice is filed with the "governing board" or "attorney" can likewise be readily accomplished by a litigant and the fact of such act or the failure to comply can be ascertained. To the contrary, however, section 24–10–109(2) and its requirement that "notice shall" be "[a] concise statement of the factual basis of the claim" or "[a] concise statement of the nature and the extent of the injury claimed" may not be so easily met nor are its contours precise.

In *Woodsmall,* 800 P.2d at 69, we concluded that compliance need only be "to the extent the claimant is reasonably able to do so." *Id.* We emphasize though, that in *Woodsmall,* we construed section 24–10–109(2) of the GIA, which concerns the contents of the notice, holding that a claimant must substantially comply with that subsection. Our holding in *Woodsmall* did not address section 24–10–109(3). Consistent with that holding, we disapprove of any reading of *Woodsmall* that applies a substantial compliance standard to section 24–10–109(3).

The court of appeals' interpretation of the statute in the instant case undermines the legislative intent as evinced by the plain language of the statute. Its application of a blanket standard of substantial compliance makes the statutory term "shall be filed with the governing body ... or the attorney" ineffective.

Under the facts of this case, while sympathy may lie with the injured plaintiff, reason does not. This case may seemingly be disposed of by applying the "substantial compliance" standard. However, even applying that standard here, where there is no record of intent or colorable effort to notify the governing board or RTD's attorney, a court should not find compliance on this record.

In any event, if we were to adopt such a substantial compliance standard, tomorrow's plaintiffs, proceeding under facts where notice was filed with a different department, or

attempted through an employee other than RTD's attorney, will require a deft judicial pilot to navigate the shoals of such a subjective standard. Even with such a pilot, a substantial compliance standard makes each claimant's ride unpredictable and will lead, we are certain, to sometimes inexplicable results under the case-by-case resolution attendant with such a standard. Therefore, because the language so clearly sets forth the specific persons with whom a claimant is to file his notice, we conclude such a case-by-case journey is not only ill-advised but simply a course we should not pursue. Following the plain command of the statute, which only permits filing in this case with one of two persons, provides relative certainty for all concerned, including our trial courts.

If we were to interpret section 24–10–109(3) broader than its plain language to permit substantial compliance so that the filing of notice with a claims adjuster in the RTD claims department has the same effect as a filing with the governing body or attorney, we are at a loss as to how thereafter we can cabin its reach. In our view, substantial compliance cannot be applied in a manner consistent with the plain language of the statute. Without the ability to limit the persons upon whom notice may be filed, we cannot conceive of any meaningful basis to require filing in future cases only with the governing board, attorney, or the RTD claims department, and not with some other RTD departments. In fact, the result argued by Nyland, if taken to its logical conclusion, would permit the filing of notice with the personnel department or individual RTD employees such as a bus driver or other persons who do not have the duties or authority of RTD's governing board or its legal counsel.[5]

In short, section 24–10–109(3) is clear and straightforward in its identification of the persons upon whom notice shall be filed. We are unwilling to alter or expand this policy choice made by the General Assembly beyond the designated persons with whom notice may be filed by reading into the statute language that patently is not there.

### C.

Nyland, as did the court of appeals, relies, in part, upon *Regional Transportation District v. Lopez,* 916 P.2d 1187 (Colo.1996). In *Lopez,* we concluded: "that the critical language of subsection (1), that 'compliance with the *provisions of this section* shall be a jurisdictional prerequisite,' must be interpreted to mean 'the provisions of this [sub]section,' *i.e.,* subsection (1), rather than the entirety of section 24–10–109." *Id.* at 1194 (emphasis added). Such reliance, however, is misplaced.

*Lopez* involved the question of whether violation of a prohibition on filing an action within 90 days after the notice of claim is filed, which prohibition is found in section 24–10–109(6) of the notice of claim statute, would "forever bar" the claim, pursuant to the "jurisdictional prerequisite" provision in section 24–10–109(1). We stated that forever barring claims because of premature filing, although supported by the plain language of the statute, would be "an absurd result and one that we should avoid." *Id.* at 1192. After extensive review of the legislative history relating to the adoption of section 24–10–109(6) (and related amendments to section 24–10–109(5)), we concluded that the General Assembly did not intend compliance with the section 24–10–109(6) bar on premature filing of actions to be a "jurisdictional prerequisite," where failure to comply would forever bar the action. We stated that the language in section 24–10–109(1) making "compliance with the provisions of this section" a jurisdictional prerequisite "must be the result of drafting error" and that "the word 'section' should read 'subsection.'" *Id.* at 1194.

After reviewing the legislative history of the 1986 amendments to section 24–10–109, which culminated in the addition of the jurisdictional prerequisite language to subsection 24–10–109(1), we explained that most of the

---

**5.** Under the GIA, a governing body has authority to waive the immunity provisions of that act and allow itself to be sued, and/or to settle a claim as to which it might have a defense in law or in fact. The board's attorney has a confidential and professional relationship to the board by which actual notice would occur.

other provisions found in section 24–10–109 "merely spell[ed] out the details of the required notice," including the proper party a plaintiff must notify. *Lopez*, 916 P.2d at 1193. We specifically noted that these other provisions were not " 'jurisdictional' requirements in the usual sense of the word." *Id.* Thus, we concluded that only the 180–day notice provision was meant to be a jurisdictional prerequisite rather than be accorded the status of a statutory notice requirement, failure to abide by which can give rise to an affirmative defense.

■■■ Legally, the distinction between a jurisdictional requirement and an affirmative defense is significant, albeit failure to abide by either a jurisdictional prerequisite or a statutory notice requirement can result in a bar to recovery. Specifically, a plaintiff's failure to meet the 180–day notice requirement of section 24–10–109(1) can be raised as a jurisdictional defect at any time by the defendant and can be raised *sua sponte* by the court because the court must determine that it has subject matter jurisdiction over a case before it exercises judicial power. *See* C.R.C.P. 12(h)(3); *Triebelhorn v. Turzanski*, 149 Colo. 558, 561, 370 P.2d 757, 759 (1962) ("[T]he defense of lack of jurisdiction over the subject matter can be raised at any time, even for the first time in this Court, and [ ] a trial court which in fact lacks jurisdiction over the subject matter cannot acquire jurisdiction over the subject matter even though the parties expressly or impliedly consent thereto."). In contrast, we conclude that the failure to comply with section 24–10–109(3), which sets forth a statutory notice requirement, gives rise to an affirmative defense that must be timely raised by the defendant. *See* C.R.C.P. 8(c) & 12(h). Failure to comply with section 24–10–109(3), therefore, can be raised by motion under C.R.C.P. 12 or by an answer to a complaint under C.R.C.P. 12(b), otherwise it is waived. *See* C.R.C.P. 12(b) ("No defense or objection is waived by being joined with one or more other defenses or objections in a responsive pleading or with any other motion permitted under rule 12 or rule 98."); *see also* C.R.C.P. 8(c) & 12(h).

Nevertheless, the fact that a statutory notice requirement is not a jurisdictional prerequisite should have no bearing on whether the notice requirement mandates substantial compliance. Here, however, as discussed above, the plain language of section 24–10–109(3) mandates more than substantial compliance by its terms. Accordingly, in light of our reasoning outlined above, we disapprove of any reading of our decision in *Lopez*, which involved the 180–day jurisdictional prerequisite under our GIA, to reach subsection (3).

Consistent with *Lopez*, we reiterate that a claimant must comply with section 24–10–109(1), and thereby give notice within 180 days. Not inconsistent with *Lopez*, we hold that notice must be "filed with" the persons specified in section 24–10–109(3).

Having so held, however, our inquiry continues. Here, Nyland did not deliver or file notice with the RTD board until nine months after the accident, well in excess of the 180–day jurisdictional requirement of section 24–10–109(1). Because, however, Nyland's five letters sent to the claims department were filed within the 180–day period, we must next decide whether those letters sent to the RTD claims department satisfy the statutory requirement that notice be "filed with the governing body . . . or [its] attorney."

### III.

■■■ Nyland argues that he did comply with section 24–10–109(3) because he effectively filed his claim through the five letters sent to the RTD claims department. We differ. Because we are unable to read "claims department" into the plain language mandate that filing "shall" be with the "governing board" or "attorney representing RTD," we disagree for the reasons set forth above. In addition, we conclude that the court of appeals, erred when it "decline[d] to follow" *Bauman v. Colorado Department of Health*, 857 P.2d 499 (Colo.App.1993) and *Aetna Casualty & Surety Co. v. Denver School District No. 1*, 787 P.2d 206 (Colo. App.1989). *See Nyland*, 937 P.2d at 809.

In *Bauman*, which involved section 24–10–109(3), Judge Jones, writing for a unanimous panel of the court of appeals, held that mailing a notice of claim to "the Department of

Health, and not to the Attorney General as required by § 24–10–109(3)," did not constitute substantial compliance with section 24–10–109(3). There, Bauman mailed notice of her age discrimination claim to the Department of Health, and not to the Attorney General. Although in *Bauman*, the court of appeals reached the correct result by applying the "substantial compliance" standard to section 24–10–109(3), we disapprove of any application of such a standard to that section of our GIA. Nonetheless, the court of appeals reached the correct result when it found that Bauman's erroneous filing did not comply with subsection (3). Here, by filing his notice with the RTD claims department, rather than with RTD's governing body or attorney, Nyland has not met the requirement of section 24–10–109(3).

■ *Aetna Casualty and Surety Co.*, also concerning section 24–10–109(3), is illustrative as well. In that case, Aetna filed its notice with the "Risk Manager" of the Denver Public Schools. The trial court dismissed for lack of jurisdiction and the court of appeals affirmed. Judge Criswell correctly opined that Aetna's filing with the Risk Manager did not comply with section 24–10–109(3)'s requirement that notice be filed with the public entity's governing body or attorney. Noting that the Risk Manager also never forwarded the notice either to the members of the school board or to its counsel, the court held that Aetna had failed to establish jurisdiction. As we later made clear in *Lopez* and reiterate today, section 24–10–109(3) is not jurisdictional in nature. Thus, while we agree with much of the opinion in *Aetna Casualty and Surety Co.*, we disapprove of the court of appeals' holding to the extent that it suggests that compliance with section 24–10–109(3) is jurisdictional.[6] Nonetheless, we do agree with that portion of Judge Criswell's opinion holding that section 24–10–109(3) "clearly mandates that the

notice be filed either with the entity's governing body or with its attorney." *Id.* at 207.

■ We also agree, as explained in *Aetna*, that the statute does not prohibit the governing body of a public entity from appointing one or more agents to receive the statutory notice on its behalf. However, in that case, dismissal was required because Aetna had failed to offer any evidence that the Risk Manager was the School Board's agent to receive the notice called for by section 24–10–109(3). In the present case, similarly, the claims department did not forward Nyland's notice to either the RTD governing board or the attorney representing the RTD, until more than 180 days after discovery of the injury, well after suit was filed.

In addition, Nyland did not argue before us that the claims department was the agent for the RTD governing board or attorney to receive notice of a claim pursuant to section 24–10–109(3). Moreover, there is no factual demonstration that the RTD Board or its attorney had actual notice of the claims within the 180–day period for notification under section 24–10–109(1). We also note that Nyland was not acting upon representations by RTD that his filing with the claims department met the notice requirements of the GIA. The absence of such claims, therefore, negates any waiver or estoppel argument. Finally, Nyland was not acting pro se and his attorney had ample opportunity during the interaction with the claims department to ascertain whether or not the claim had been forwarded to the Board or its attorney. We find no evidence in the record to support such claims here.

Because we reject Nyland's argument that substantial compliance meets the mandate of section 24–10–109(3), we need not and do not reach the other issues raised on certiorari as to the burden of proof or the nature of substantial compliance.[7]

**6.** Both *Bauman* and *Aetna* predate our decision in *Lopez*. Thus, to the extent that those two cases characterize the notice requirement of section 24–10–109(3) as a jurisdictional prerequisite, they were overruled by *Lopez*. We also note that, as a consequence, we disapprove of that portion of *Aetna* which concludes, based on its mistaken belief that compliance with section 24–

10–109(3) is jurisdictional, that "the doctrines of waiver and estoppel cannot be applied to validate a notice that does not comply with the statute." *Aetna*, 787 P.2d at 207.

**7.** *See supra*, note 1.

## IV.

In sum, we hold that a plaintiff must file notice with the "governing body" of RTD or its "attorney" to comply with the place of notice requirements of section 24–10–109(3). We also hold, therefore, that where a plaintiff does not comply with section 24–10–109(3) of the GIA, the state or a public entity may assert an affirmative defense that, when properly raised pursuant to C.R.C.P. 12(b) or otherwise, may bar recovery. Moreover, we conclude that filing a claim for PIP benefits in the RTD claims department does not comply with the requirement that notice "shall be filed with the governing board" or the agency "attorney."

Accordingly, we reverse the judgment of the court of appeals and remand this case to the court of appeals with directions that it return the case to the Denver District Court for further proceedings consistent with this opinion.

KOURLIS, J., concurs and specially concurs, and MULLARKEY, J., joins in the concurrence and special concurrence.

MARTINEZ, J., dissents, and VOLLACK, C.J. and BENDER, J. join in the dissent.

Justice KOURLIS concurring and specially concurring:

I concur with the Majority, but write separately to explain further my view of the operation of section 24–10–109, 7 C.R.S. (1997).

The application of section 24–10–109 has bedeviled the courts for over a decade, both before and after the most recent amendments by the General Assembly. The reason for that struggle is really quite simple: courts must interpret and apply statutes as written, but also must open their doors to the resolution of disputes on the merits whenever possible.

Governmental immunity represents the clearest example of the tension created by that dual obligation. More particularly, governmental immunity is in derogation of the common law and is to be narrowly construed. See Swieckowski v. City of Fort Collins, 934 P.2d 1380, 1388 (Colo.1997). This court and the court of appeals have resolved disputes about the interpretation of section 24–10–109 within the crucible of that tension. See, e.g., East Lakewood Sanitation Dist. v. District Court, 842 P.2d 233 (1992); Woodsmall v. Regional Transp. Dist., 800 P.2d 63 (Colo. 1990); Aetna Cas. & Sur. Co. v. Denver Sch. Dist., 787 P.2d 206 (Colo.App.1989).

In my view, the analysis of compliance with section 24–10–109 begins with the distinction between those provisions that are jurisdictional and those that are not. The consequences of designating a provision as jurisdictional, at least insofar as subject matter jurisdiction is concerned, relate to issues such as whether waiver or estoppel may apply, whether the provision creates a defense which can be waived and whether a dismissal with prejudice is warranted.

Whether a provision is jurisdictional or not is the first inquiry. This analysis does not involve what might be required to satisfy or comply with the provision. We must seek to disentangle questions about subject matter jurisdiction from questions about compliance. What constitutes compliance turns on the language and intent of the provision, not the jurisdictional or non-jurisdictional import of the provision.

## I.

Thus I begin the analysis of section 24–10–109 with an examination of which provisions are jurisdictional. We have already held that subsection (1) creates a jurisdictional prerequisite to the litigation of claims against a public entity. See Regional Transp. Dist. v. Lopez, 916 P.2d 1187, 1193 (Colo.1996). This portion of the statute is correctly characterized as a "non-claim" statute similar to the non-claim statute found in the Probate Code divesting courts of subject matter jurisdiction over creditors' claims not filed within specified time limits. See § 15–12–803, 5 C.R.S. (1997); McMahon v. Denver Water Bd., 780 P.2d 28, 29 (Colo.App.1989)(holding that section 24–10–109(1) contains the language of a non-claim statute and citing by way of example a probate case decided under section 15–12–803). Subsection (1) provides in pertinent part that "[c]ompliance with the provisions of

this section shall be a jurisdictional prerequisite to any action ... and failure of compliance shall forever bar any such action." § 24–10–109, 7 C.R.S. (1997). The language specifically designating the provision as jurisdictional, as well as the phrase "shall forever bar," distinguish this provision as a non-claim statute rather than a statute of limitation. *See Estate of Daigle,* 634 P.2d 71, 76 (Colo. 1981). Hence subsection (1), like section 15–12–803, represents a non-claim statute implicating subject matter jurisdiction, the terms of which cannot be waived or tolled.

## II.

As we noted in *Lopez,* the jurisdictional language is limited in its application to subsection (1), which mandates the filing of notice within 180 days. *See Lopez,* 916 P.2d at 1194–95. This limitation also comports with the notion of a non-claim statute as being temporal in nature and analogous (but not identical) to a statute of limitations. *See Public Serv. Co. v. Barnhill,* 690 P.2d 1248, 1251 (Colo.1984)("The term 'non-claim statute' describes legislation which prohibits absolutely the initiation of litigation after a specific period of time."). The time requirement is the only defect that is jurisdictional, and thus cannot be waived and permits no equitable defense.

The remaining subsections under 24–10–109 concern issues other than the 180–day jurisdictional time limit, and do not raise issues of subject matter jurisdiction. Rather, to continue the analogy to the Probate Code, the remaining subsections parallel section 15–12–804 of the Probate Code entitled "Manner of presentation of claims." *See* § 15–12–804, 5 C.R.S. (1997). Similar to the remaining subsections in 24–10–109, section 15–12–804 covers issues such as where to file the notice and what the notice should contain. *See* § 15–12–804, 5 C.R.S. (1997). Just as with the remaining subsections of 24–10–109, these provisions create statutory defenses, rather than a jurisdictional bar, to claims. Such defenses, once raised, must be considered within the specific context of the facts of the case and the language of the applicable statutory provision. *Cf. Crowley v. Farmers State Bank,* 109 Colo. 146, 151, 123 P.2d 407,

409 (1942) (interpreting the previous version of 15–12–804, and requiring that a creditor file the original, not a copy, of a promissory note with the court in order to comply with the statute, unless the personal representative waived the defense); *and Estate of Rienks,* 844 P.2d 1295 (Colo.App.1992) (disallowing a creditor's claim that was filed with a person who had not received formal appointment as a personal representative); *with Strong Bros. Enters., Inc. v. Estate of Strong,* 666 P.2d 1109 (Colo.App.1983) (finding that the contents of a letter sufficiently described the nature of the creditor's claim and could, under the statute in this circumstance, be delivered to the personal representative's attorney).

The point of the analogy to the legislative scheme in the Probate Code is simple: a non-claim provision is jurisdictional and temporal in nature; other provisions describing the nature and method of filing create statutory requirements that must be examined for compliance on a case-by-case basis. This is precisely how we have treated and should treat the other subsections of section 24–10–109.

## III.

Once the jurisdictional issue is settled, the question then centers upon what constitutes compliance with the particular provision at issue. This analysis should not focus on substantial versus strict compliance or substantial versus impliedly strict compliance. As with any statutory defense, we must look to the language and intent of the statute and also take into account any relevant equitable considerations.

Here we deal with the mandate of subsection (3), which states that notice "shall be filed with the governing body of the public entity or the attorney representing the public entity." § 24–10–109(3), 7 C.R.S. (1997).

The subsection does not involve matters of subject matter jurisdiction as *Lopez* made clear. Rather, failure to comply with the subsection was properly raised as a defense by RTD in a motion to dismiss, leaving the trial court to determine whether the plaintiff had complied.

The court must then look to the language of the subsection and determine what it requires. Unlike subsection (2), where the claimant could be asked to provide information that might then be incomplete, such as medical condition and diagnosis of the claimant's injury, *see Woodsmall*, 800 P.2d at 68, there is no room for differing interpretations and no argument of impossible demands in subsection (3). The claimant is simply required to file notice with certain individuals, depending upon the entity being sued, and Nyland did not do so.

Indeed, Nyland made no attempt whatsoever within the 180–day time period to notify RTD's governing board or attorney. Moreover, Nyland does not claim that RTD has taken any action or made any representation which would constitute a waiver or create an estoppel argument. Instead Nyland argues that a series of letters containing one isolated reference to liability (as distinguished from PIP) issues that he sent to RTD's claims department constituted compliance with subsection (3). The statutory language directs otherwise.

Compliance with subsection (3) is straightforward. It does not, as in *Woodsmall* and *Lopez*, raise the specter of an absurd or overly harsh result. To the contrary, if there is any absurdity here it arises out of the fiction that the claims department can be transformed by judicial alchemy into the governing body or attorney under the language of the statute. It is a simple enough proposition under the facts of this case that Nyland, represented by counsel, could have sent his notice to the party designated in the statute.

Accordingly, I agree with the Majority first that subsection (3) does not create a subject matter jurisdictional bar, and second that Nyland failed to comply with the provisions of the subsection. . I would, therefore, reverse the court of appeals and direct the return of this case to the trial court with directions to grant the motion to dismiss Nyland's claims for failure to comply with section 24–10–109(3).

I am authorized to state that JUSTICE MULLARKEY joins in this special concurrence.

## JUSTICE MARTINEZ dissenting:

The majority holds that the court of appeals erred by applying a substantial compliance standard to the notice provisions of section 24–10–109(3), 7 C.R.S. (1997). *See* maj. op. at 1040. The majority further determines that section 24–10–109(3) "mandates more than substantial compliance," *id.* at 1043, and that the respondent did not satisfy this standard. *See id.* at 1043. Because I believe that an injured person satisfies section 24–10–109(3) by substantially complying with its notice requirements, and that the respondent did so here, I respectfully dissent.

### I.

This case involves personal injuries sustained by the respondent, Travis Nyland, after he was struck by an RTD bus. On March 23, 1993, the bus hit Nyland while he was attempting to cross the intersection at 11th Avenue and Peoria Street in Aurora, Colorado. As a result, Nyland received a head injury and was knocked unconscious. In addition, his right ankle was broken and his left heel was "crushed," injuries which required him to undergo surgery[1] and wear knee-length casts on both legs.

As the majority opinion notes, Nyland retained an attorney who subsequently sent five letters to the RTD claims department ("Department") before the 180–day period for filing written notice had elapsed. *See* maj. op. at 1039; 24–10–109(1). These letters were sent to Armonde Hainesworth, a claims adjuster who worked for the Department. In the first of these letters, sent on April 5, 1993, Nyland's attorney informed Hainesworth that the attorney would "be representing [Nyland] with regard to both the liability and PIP issues." Shortly thereafter, on April 30, 1993, Hainesworth sent the attorney a letter requesting his "assistance" in the investigation of Nyland's claim. As a part of this assistance, Hainesworth

---

1. The surgery on Nyland's legs included the placement of two metal pins.

asked the attorney to "please forward your theory of liability for my Risk Manager's review."

On December 15, 1993, Nyland's attorney sent Hainesworth an "Amended Notice of Claim," which Hainesworth forwarded to the attorney representing RTD. On December 30, 1994, Nyland commenced this negligence action in Denver District Court, and RTD filed a motion to dismiss on the ground that Nyland's notice to RTD's attorney was untimely filed. *See* 24–10–109(1). RTD alleged that the letters to Hainesworth failed to comply with the requirement of section 24–10–109(3) that notice "be filed with the governing body of the public entity or the attorney representing the public entity."

In his deposition testimony, Hainesworth testified that, as part of his "general functions" as a claims adjuster, he investigates both an injured party's PIP claims and personal injury liability claims. Hainesworth also testified that, in this particular case, he acted only as a "PIP adjuster," and that his Risk Manager, David Beacom, operated as the personal injury adjuster. Hainesworth offered no explanation as to why he was only responsible for Nyland's PIP claims in this particular case, and neither his testimony nor other parts of the record indicate that Nyland's attorney was aware of his limited function.

The trial court denied RTD's motion, determining that the letters sent by Nyland to Hainesworth "substantially complied" with the notice requirement of section 24–10–109(3). The court found that Nyland's attorney informed Hainesworth in the first letter that he was representing Nyland with respect to both PIP and liability issues, and that the letters sent to Hainesworth "specifically referred to the plaintiff's employment, work hours, and hourly pay, such that the amount of lost wages might be estimated." The court also found that RTD was not prejudiced by the fact that the letters were sent to Hainesworth, instead of the RTD governing board ("Board") or its attorney, because "[i]n addition to having information about [Nyland's] injuries and lost wages, RTD apparently has located and obtained a

statement from the only known passenger-witness."

In affirming the trial court's order denying RTD's motion to dismiss, the court of appeals determined that "a claimant need only substantially comply with the 24–10–109(3) requirement that notice be sent to the public entity's governing body or legal counsel." *Nyland v. Brock*, 937 P.2d 806, 809 (Colo. App.1996). The court of appeals further held that the letters sent to Hainesworth constituted substantial compliance because they fulfilled the purposes of section 24–10–109(3):

> Here, the record reveals no inability on the part of RTD to investigate and defend the action brought by [Nyland]. In fact, as the trial court found, the record establishes that RTD actively investigated [Nyland's] claims. Not only did the claims adjuster seek the help of [Nyland's] attorney in its investigation, he requested that the attorney complete RTD accident report forms and provide the legal theory upon which he relied to RTD's risk manager.
>
> Based on the scope of the investigation conducted by the claims adjuster, we agree with the trial court's conclusion that RTD suffered no prejudice.... Further, RTD has not shown that it would have investigated any differently nor made any different fiscal arrangements to meet any potential liability even if [Nyland] had given notice to RTD's governing body or its legal counsel.

937 P.2d at 809–10.

## II.

In determining that the letters sent to Hainesworth did not satisfy section 24–10–109(3), the majority opinion holds that "the plain language of section 24–10–109(3) mandates more than substantial compliance by its terms." Maj. op. at 1043. Although it does not do so expressly, the majority opinion thus effectively holds that section 24–10–109(3), like section 24–10–109(1), is subject to a strict compliance standard. We have never held there to exist a standard of compliance that is less than "strict," yet "more

than substantial."[2] Rather, strict compliance is the appropriate standard whenever substantial compliance is insufficient. *See Woodsmall v. Regional Transp. Dist.*, 800 P.2d 63, 67 (Colo.1990) ("Compliance ... may be absolute or strict, on the one hand, or somewhat less than absolute but nonetheless substantial, on the other."); *see also East Lakewood Sanitation Dist. v. District Court*, 842 P.2d 233, 236 (because substantial compliance standard does not apply to 180-day notice requirement of subsection (1), appropriate standard is strict compliance).[3]

In my view, the majority's application of a strict compliance standard is inconsistent with our decision in *Regional Transportation District v. Lopez*, 916 P.2d 1187 (Colo.1996), which held that the "strict compliance" standard applies only to section 24–10–109(1). As the majority concedes, in *Lopez* we relied on rules of statutory construction and the legislative history of section 24–10–109 to determine "that the language in subsection (1) stating that '[c]ompliance with the *provisions of this section* shall be a jurisdictional prerequisite,' *must be the result of a drafting error.*" 916 P.2d at 1194 (second emphasis added); *see* maj. op. at 1042. We therefore concluded that "the word 'section' [in subsection (1)] should read 'subsection,'" and that the strict compliance standard mandated by the legislature's use of the phrase "jurisdictional prerequisite" in subsection (1) applies only to that subsection. *Lopez*, 916 P.2d at 1194–95. When the legislature intended other subsections of section 24–10–109 to be subject to a strict compliance standard, we noted that it included language to that effect. *See id.* at 1194 ("If the 'jurisdictional prereq-

uisite' language of subsection (1) is read to apply to all of section 24–10–109, there would be no reason for the reiteration of the 'forever barred' language in subsection (5)"). Thus, although the plaintiff in *Lopez* failed to strictly comply with the provisions of section 24–10–109(6), we determined that the plaintiff's claim should not have been dismissed because there was no evidence that the plaintiff did not substantially comply with that provision. *See Lopez*, 916 P.2d at 1196 (dismissal unwarranted because plaintiff's failure to strictly comply with section 24–10–109(6) did not prejudice RTD or preclude it from evaluating plaintiff's claim).

Despite this unambiguous holding in *Lopez*, the majority effectively holds that section 24–10–109(3) is subject to a strict compliance standard and "disapprove[s] of any reading of our decision in *Lopez* ... to reach subsection (3)". Maj. op. at 1043. Given, however, that subsection (3) contains no language indicating that its notice provisions are a jurisdictional prerequisite, or that a failure to comply "forever bars" the claim, application of a strict compliance standard to that subsection is in direct conflict with *Lopez* and vitiates our reasoning in that case. By applying a strict compliance standard to subsection (3), even though that subsection contains no language imposing such a requirement, the majority effectively overrules *Lopez* and holds that the "jurisdictional prerequisite" language in subsection (1) applies both to that subsection and subsection (3). This tacit rejection of *Lopez* injects uncertainty into the proper construction of other notice provisions contained in section 24–10–109. By the majority's reasoning, all notice

2. Such a holding would be anomalous. The term, "strict," is defined as "inflexibly maintained or adhered to ... exact, precise." *Webster's Ninth New Collegiate Dictionary* 1167 (1989). "Substantial" is defined as "being largely but not wholly that which is specified." *Id.* at 1176. Thus, where a notice provision requires more than *substantial* compliance, *nothing less than absolute*, or strict, compliance satisfies the statutory mandate.

3. As we reasoned in *Woodsmall*, the plain language of the statutory notice requirements of *section 24–10–109, even when unambiguous*, does not necessarily resolve the question of whether a court should employ a strict or sub-

stantial compliance standard. *See* 800 P.2d at 67. "Compliance" with these requirements, "without further modification, connotes an element of degree." *Id.* Thus, while it is true that section 24–10–109(3) requires delivery of notice to the governing body of the entity or its attorney, this language, by itself, is not determinative on the question of what degree of compliance the legislature requires. To the contrary, in determining whether a plaintiff's efforts satisfy the notice requirements of section 24–10–109, we "impose[] a degree of compliance consistent with the objective sought to be achieved by the legislation under consideration." *Woodsmall*, 800 P.2d at 67.

provisions in section 24–10–109 that use the term "shall," followed by "definite and certain" language are subject to strict compliance. Maj. op. at 1041. However, we have never held this to be the case. *See Lopez,* 916 P.2d at 1196 (applying substantial compliance standard to subsection (6));[4] *Woodsmall,* 800 P.2d at 69 (applying substantial compliance standard to subsection (2)); *see also East Lakewood,* 842 P.2d at 236 (use of term "shall" in subsection (1), together with fact that compliance with its provisions is jurisdictional prerequisite, requires application of strict compliance standard).

The majority opinion concludes that those subsections of section 24–10–109 which are not jurisdictional requirements should be treated as "statutory notice requirements," and that a statutory notice requirement "gives rise to an affirmative defense that must be timely raised by the defendant." Maj. op. at 1043. I see nothing in *Lopez* or in the language of section 24–10–109 that creates the majority's distinction between "jurisdictional requirements" and "affirmative defenses." Nor do I find anything in the arguments of the parties that raise this distinction. In my view, section 24–10–109 concerns jurisdictional matters, and we must apply our precedent to require only substantial compliance with the provisions of subsection (3).

I therefore dissent from the majority's holding that the notice provisions of section 24–10–109(3) require "more than substantial compliance." I would affirm the court of appeals' holding that a plaintiff satisfies the notice requirements of section 24–10–109(3) if he or she substantially complies with those provisions.

### III.

An injured plaintiff substantially complies with the notice requirement contained in section 24–10–109 if the plaintiff's good-faith efforts at notification satisfy the legislative purposes of the statute. *See Woodsmall,* 800 P.2d at 67. Substantial compliance is attained when the plaintiff makes a "good faith effort to satisfy the notice requirements," and any errors or omissions do not prejudice the public entity by adversely affecting its ability to defend against the claim. *Id.* at 68–69. A public entity is not prejudiced by a plaintiff's failure to strictly comply as long as the plaintiff's error does not prevent the public entity from investigating and remedying any dangerous conditions, making adequate fiscal arrangements to meet any potential liability, or preparing a defense to the claim. *See id.* at 68. A public entity moving for dismissal on the ground that an injured plaintiff failed to substantially comply with a notice requirement of section 24–10–109 bears the burden of proving no substantial compliance. *See Woodsmall,* 800 P.2d at 69.[5]

In my view, although no actual notice was received by the RTD Board or its attorney within the 180–day time period, the purposes of section 24–10–109(3) were satisfied by the letters sent to the Department. The letters sent by Nyland to Hainesworth not only permitted RTD to investigate the claims inasmuch as they were sent to a branch of RTD whose function is to investigate claims, but the record indicates that the Department did, in fact, actively investigate those claims.[6] In addition, the letters permitted RTD to make adequate fiscal arrangements to meet any potential liability and to prepare a de-

---

**4.** In *Lopez,* the claimant failed to strictly comply with the requirement of subsection (6) that, once notice is filed pursuant to subsection (1), the claimant may not bring an action until the public entity has denied the claim or ninety days have passed, whichever occurs first. 916 P.2d at 1192–93. Thus, even though subsection (6) uses the term "shall" in connection with "definite and certain" language, maj. op. at 1041, we nevertheless applied a substantial compliance standard to that provision. *See Lopez,* 916 P.2d at 1196.

**5.** This burden is practical and logical when the issue is substantial compliance. Because this issue involves considerations of whether the entity adequately investigated the claim and had the

opportunity to prepare for legal action, as well as considerations of whether the plaintiff's errors prejudiced the entity, the entity is in a better position to obtain and present evidence than the injured plaintiff. Accordingly, I agree with the court of appeals that the burden lies with the entity to prove that the plaintiff did not substantially comply with the notice provisions of section 24–10–109(3). *See Brock,* 937 P.2d at 809–10.

**6.** Indeed, as the court of appeals noted below, Hainesworth even sought the assistance of Nyland's attorney in investigating the claim, and requested the "legal theory" upon which the claim was based.

fense. The April 30 letter from Hainesworth indicates that Hainesworth was aware of the possibility of legal action, while the numerous letters from Nyland's attorney provided detailed information concerning the extent of Nyland's medical claims.

Most importantly, the record supports the trial court's finding that RTD was not prejudiced by Nyland's failure to notify the Board or its attorney. The trial court found that the letters to Hainesworth informed RTD of Nyland's "injuries and lost wages," and that RTD had "located and obtained a statement from the only known passenger-witness" to the incident. This finding is supported by the record, which shows that only one passenger was riding the bus that struck Nyland and that RTD obtained a tape-recorded statement from this witness shortly after the accident. Consequently, nothing in the record indicates that RTD's ability to defend against the claim was adversely affected by Nyland's failure to strictly comply with the notice provisions of section 24–10–109(3). *See Lopez*, 916 P.2d at 1194 (prejudice occurs when, due to plaintiff's error, evidence is lost or entity is not able to "remedy a potentially dangerous situation promptly"). I therefore would hold that the court of appeals correctly determined that RTD failed to meet its burden of proving that Nyland failed to substantially comply with the notice provisions of section 24–10–109(3).

## IV.

The majority's application of a strict compliance standard to the notice provisions of section 24–10–109(3) is inconsistent with our decision in *Lopez*. Under a substantial compliance standard, the letters sent by the respondent to RTD's claims adjuster complied with the requirement in section 24–10–109(3) that notice be filed with "the governing body of the public entity or the attorney representing the public entity." I therefore respectfully dissent, and would affirm the opinion of the court of appeals.

VOLLACK, C.J., and BENDER, J., join in this dissent.

