Esperanza **VILLALPANDO,**
**Plaintiff–Appellant,**

v.

**DENVER HEALTH AND HOSPITAL AUTHORITY; Simon Shakar, M.D.; Paul Suri, M.D.; Kathy Thigpen, M.D.; and Eugenia Carroll, M.D., Defendants–Appellees.**

No. 05CA2752.

Colorado Court of Appeals,
Div. VI.

Nov. 15, 2007.

Certiorari Denied April 7, 2008.

Smith & Schaffer, P.C., Peter J. Schaffer, Denver, Colorado, for Plaintiff–Appellant.

Pryor Johnson Carney Karr Nixon, P.C., Scott S. Nixon, Elizabeth C. Moran, Greenwood Village, Colorado, for Defendant–Appellee Denver Health and Hospital Authority.

Montgomery Little Soran Murray & Kuhn, P.C., Kevin J. Kuhn, Kara Knowles, Greenwood Village, Colorado, for Defendants–Appellees Simon Shakar, M.D., Paul Suri, M.D., Kathy Thigpen, M.D., and Eugenia Carroll, M.D.

Opinion by Judge FURMAN.

In this wrongful death action, plaintiff, Esperanza Villalpando, as surviving spouse and personal representative of the estate of Jesus Villalpando, appeals (1) the district court's judgment in favor of defendants, Drs. Simon Shakar, Paul Suri, Kathy Thigpen, Eugenia Carroll (collectively physicians), and Denver Health and Hospital Authority (DHHA), and (2) the award of attorney fees pursuant to section 13–17–201, C.R.S.2007. We affirm.

## I. Background

Ms. Villalpando alleged that during 1997 and 1998, her husband received ongoing medical care from physicians at Denver General Hospital (now known as Denver Health Medical Center) for complaints of fatigue, trouble breathing, and daily chest pains. During one visit to the hospital's cardiology unit, Drs. Carroll and Shakar administered a treadmill test to Mr. Villalpando. They could not complete the test, however, because of Mr. Villalpando's fatigue. He was sent home without further treatment. Mr. Villalpando's condition worsened over the next several months, and on September 8, 1998, he died.

On March 1, 1999, Ms. Villalpando's attorney mailed a letter to the Denver City Attorney, giving "notice of claim" to the City of Denver, its employees, and Denver Health Medical Center. This letter alleged that physicians and other employees of the City and County of Denver failed to treat Mr. Villalpando's medical condition, and that the "breach of duty of the City and County of Denver" through its "[physicians] and other employees," caused the death of Mr. Villalpando. The Denver City Attorney's office forwarded the notice of claim to General Counsel for DHHA. Denver Health Medical Center is operated by DHHA, which is a separate public entity and political subdivision of the State of Colorado. *See* §§ 25–29–101 to–112, C.R.S.2007. The notice of claim was then forwarded to the Risk Management

Director at the University of Colorado Health Sciences Center.

Subsequently, Ms. Villalpando filed a complaint against defendants, alleging claims for wrongful death; negligence; negligent hiring, training, retention, and supervision; negligent infliction of emotional distress; and breach of contract.

DHHA and the physicians moved to dismiss Ms. Villalpando's claims for lack of subject matter jurisdiction under C.R.C.P. 12(b)(1), asserting she failed to comply with the notice of claim requirements set forth in the Colorado Governmental Immunity Act (CGIA), sections 24–10–101 to–115, C.R.S. 2007.

The district court held an evidentiary hearing under *Trinity Broadcasting of Denver, Inc., v. City of Westminster*, 848 P.2d 916, 925 (Colo.1993), and granted the physicians' motion. In a detailed and well-reasoned order, the court found the physicians were employed by the University of Colorado, not DHHA, and that Ms. Villalpando never gave notice to the University of Colorado. However, the court denied DHHA's motion, finding that Ms. Villalpando had substantially complied with the notice requirements as to DHHA.

DHHA then filed a motion for summary judgment, arguing that, as a matter of law under the corporate practice of medicine doctrine, it could not be liable for the medical malpractice of the physicians, or for negligent hiring, training, retention, and supervision of the physicians, because they were University of Colorado employees. The district court agreed with DHHA, granted summary judgment, and dismissed the case. The court also entered an order granting the physicians' motion for attorney fees pursuant to section 13–17–201.

Ms. Villalpando challenges the district court's dismissal of her claims as to the physicians, entry of summary judgment as to DHHA, and award of attorney fees to the physicians. We address each argument in turn.

## II. Dismissal of Claims

Ms. Villalpando contends the district court erred in granting the physicians' motion to dismiss her claims for lack of subject matter jurisdiction because (1) she substantially complied with the CGIA's notice of claims provisions; and (2) the agency relationship between the University of Colorado and DHHA resulted in notice to one serving as notice to the other. We disagree.

■ Under the CGIA, an injured person seeking damages from a public entity or employee must provide written notice of his or her claims within 180 days of discovery of the injury. §§ 24–10–109(1), 24–10–118(1)(a), C.R.S.2007. Failure to comply strictly with the 180–day time limit is an absolute bar to suit. *Gallagher v. Bd. of Trustees for Univ. of N. Colo.*, 54 P.3d 386, 390–91 (Colo.2002); *Mesa County Valley Sch. Dist. No. 51 v. Kelsey*, 8 P.3d 1200, 1206 (Colo.2000).

■ The notice provision "places a burden on the injured party to determine the cause of the injury, to ascertain whether a governmental entity or public employee is the cause, and to notify the governmental entity" within the statutory time limit. *Trinity Broadcasting*, 848 P.2d at 927.

Section 24–10–109(3), C.R.S.2007, of the CGIA addresses who must receive a timely notice of claim. If a claimant files a claim against a public entity other than the state, or an employee of a public entity other than the state, the claimant must file notice of the claim with the attorney representing the public entity or its governing body. § 24–10–109(3). "Public employee" includes "[a]ny health care practitioner employed by a public entity." § 24–10–103(4)(b)(I), C.R.S.2007.

■ The physicians here were health care practitioners employed by the University of Colorado, a public entity. *See Univ. of Colo. v. Booth*, 78 P.3d 1098, 1100 (Colo.2003) (the University is an instrumentality of the state for CGIA purposes). Thus, Ms. Villalpando was required to provide timely notice of claim to the Board of Regents for the University of Colorado, University Counsel, or the Attorney General. *See id.*

However, strict compliance with the notice of claim provision in section 24–10–109(3) is not required. *Finnie v. Jefferson County Sch. Dist. R–1,* 79 P.3d 1253, 1258 (Colo.2003). Rather, a claimant satisfies section 24–10–109(3) if he or she substantially complies with the statute by making a "good faith effort to satisfy the notice requirements." *Finnie,* 79 P.3d at 1257 (quoting *Brock v. Nyland* 955 P.2d 1037, 1050 (Colo. 1998) (Martinez, J., dissenting)). If necessary, the district court may conduct a *Trinity* hearing to determine whether a claimant has substantially complied with section 24–10–109(3).

We uphold the trial court's factual determinations of CGIA issues unless they are clearly erroneous. *Miller v. Campbell,* 971 P.2d 261, 263 (Colo.App.1998).

### A. Substantial Compliance

Ms. Villalpando does not dispute that the Board of Regents for the University of Colorado, University counsel, and the Attorney General were not served with a timely notice of claims. She argues, however, that her diligent research about possible defendants prior to filing her notice of claims with the Denver City Attorney constituted a good faith effort to satisfy the notice requirement under *Finnie,* thus allowing her claims to proceed on the merits. We are not persuaded.

At the *Trinity* hearing, Ms. Villalpando asserted that she had reviewed all the decedent's medical records, and that no record indicated the University of Colorado employed the physicians. However, in its order dismissing the claims against the physicians, the district court found that Ms. Villalpando's efforts to determine with whom and where to file a notice of claim were "woefully inadequate with respect to the [physicians] and the University of Colorado" because (1) the physicians wore badges clearly identifying them as University of Colorado employees; (2) the medical records contained information showing that some of the physicians were in training with the University of Colorado, and that Mr. Villalpando was treated at University Hospital; and (3) if Ms. Villalpando had asked prior to sending the notice of claims,

she would have been told that the physicians were University of Colorado employees and where to file the notice. Lacking a transcript of the *Trinity* hearing, we have no basis for reviewing those findings and must assume they are correct. *See Travers v. Rainey,* 888 P.2d 372, 374 (Colo.App.1994); *see also Miller,* 971 P.2d at 263.

We therefore conclude the district court did not err in finding that Ms. Villalpando's efforts were "inadequate," and that she did not make a good faith effort to satisfy the notice of claim requirements. *Finnie,* 79 P.3d at 1258. Accordingly, the notice she filed with the Denver City Attorney did not comply with the CGIA's notice requirements, and the district court did not err in granting the physicians' motion to dismiss her claims for lack of subject matter jurisdiction.

### B. Agency Relationship

Ms. Villalpando nevertheless contends she did not need to file notice of her claim with anyone else because an agency relationship between the University and DHHA resulted in notice to one serving as notice to the other. We disagree.

In *Finnie,* the supreme court determined that district courts should evaluate compliance with the CGIA's notice requirement by "considering principles of agency and equity, the purposes of the notice statute, and concerns of preventing governmental entities from misleading plaintiffs." *Finnie,* 79 P.3d at 1262.

An agency relationship "results from the manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and consent by the other so to act." *Rush Creek Solutions, Inc. v. Ute Mountain Ute Tribe,* 107 P.3d 402, 407 (Colo.App.2004) (quoting *City & County of Denver v. Fey Concert Co.,* 960 P.2d 657, 660 (Colo.1998)). Authority to act on behalf of another can be actual or apparent. *Willey v. Mayer,* 876 P.2d 1260, 1264 (Colo.1994).

Actual authority can be express or implied. Express authority exists if the principal directly states that an agent has

authority to perform a particular act on the principal's behalf. Implied authority involves authority to do acts that are incidental to, or are necessary, usual, and proper to accomplish or perform, the primary authority expressly delegated to the agent. *Id.* at 1264–65.

■ Apparent authority is established by proof of "written or spoken words or other conduct of the principal which, reasonably interpreted, causes a person to believe that the principal consents to have the act done on his behalf by a person purporting to act for him." *Lucero v. Goldberger,* 804 P.2d 206, 209 (Colo.App.1990). It protects third parties who, in good faith, rely on their belief that an agency relationship exists between the apparent principal and agent. *Rush Creek Solutions,* 107 P.3d at 407.

■ Whether an agency relationship exists generally is a question of fact, though the court may decide the question as one of law when the facts are undisputed. *Fey Concert Co.,* 960 P.2d at 661. On appeal, we review the trial court's factual findings under a clear error standard. *DiCocco v. Nat'l Gen. Ins. Co.,* 140 P.3d 314, 316 (Colo.App. 2006).

DHHA had contracted with the University of Colorado Health Sciences Center for it to assign medical interns, residents, and fellows to DHHA and provide DHHA with health care risk management and claims management services. Pursuant to that agreement, DHHA assumed responsibility to defend all claims or suits and pay all settlements or judgments that were based upon the alleged negligence of the staff in medically related activities while rotating through services or programs of DHHA.

The district court found,

There is no evidence in the record that the Denver City Attorney's office had an agency relationship with the University of Colorado. There is nothing in the Affiliation Agreement or the Risk Management Service Agreement between DHHA and the Regents of the University of Colorado that can be construed to create an agency relationship for the purposes of the CGIA.

The court also found the University of Colorado did not learn of Ms. Villalpando's claims and did not conduct an investigation into those claims until two years after suit had been filed.

We conclude the district court's findings were not clearly erroneous. Ms. Villalpando has failed to establish an agency relationship based on actual authority because there is no indication DHHA, by express delegation or practice, implemented a policy to accept claims that should have been directed to the University. *Willey,* 876 P.2d at 1264. Ms. Villalpando also failed to establish an agency relationship based on apparent authority because she admitted she did not know the physicians were employees of the University of Colorado. Thus, she could not have relied on the appearance of an agency relationship between the University of Colorado and DHHA when she filed her notice of claim. *See Goldberger,* 804 P.2d at 209.

We therefore conclude the district court did not err in determining that DHHA and the University of Colorado had not formed an agency relationship. Hence, Ms. Villalpando failed to satisfy the CGIA notice of claim requirements by giving notice to DHHA.

### III. Summary Judgment

Ms. Villalpando next contends the district court erred in granting DHHA's motion for summary judgment because (1) DHHA committed independent acts of negligence that fell within the special conduct exception to the corporate practice of medicine doctrine when it hired, retained, supervised, and trained the physicians; and (2) DHHA is liable for the negligent acts of its non-physician employees. We disagree.

Summary judgment is appropriate when the pleadings and supporting documentation show that no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *W. Elk Ranch, L.L.C. v. United States,* 65 P.3d 479, 481 (Colo.2002). Mere allegations or conclusions are insufficient to create a factual issue. *Kinney v. Keith,* 128 P.3d 297, 310 (Colo.App. 2005); *see also Andersen v. Lindenbaum,* 160 P.3d 237, 239 (Colo.2007) ("[i]f the evi-

dence opposing summary judgment is merely colorable or is not significantly probative, summary judgment may be granted" (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986))).

When the court is determining whether to grant a motion for summary judgment, "[t]he nonmoving party is entitled to the benefit of all favorable inferences from the undisputed facts, and all doubts as to the existence of a triable issue of fact must be resolved against the moving party." *W. Elk Ranch, L.L.C.*, 65 P.3d at 481. We review de novo the grant of a summary judgment motion. *Id.*

### A. The Special Conduct Exception

Ms. Villalpando contends the special conduct exception to the corporate practice of medicine doctrine applies here because DHHA agreed to indemnify the University of Colorado for the malpractice and negligence of its residents and physicians. We disagree.

 The corporate practice of medicine doctrine recognizes that "it is impossible for a fictional entity, a corporation, to perform medical actions or be licensed to practice medicine." *Estate of Harper v. Denver Health & Hosp. Auth.*, 140 P.3d 273, 275 (Colo.App.2006) (quoting *Pediatric Neurosurgery, P.C. v. Russell*, 44 P.3d 1063, 1067 (Colo.2002)); *see* § 12–36–134, C.R.S.2007. Under this doctrine, a corporation that employs a physician may not interfere with the physician's independent medical judgment. *Russell*, 44 P.3d at 1067; *Estate of Harper*, 140 P.3d at 278 ("[DHHA] is not explicitly authorized or required to practice medicine and ... cannot control the independent medical judgment of its employees").

 The doctrine generally shields corporations from vicarious liability for the negligent acts of physician employees. *Estate of Harper*, 140 P.3d at 275; *see Moon v. Mercy Hosp.*, 150 Colo. 430, 433, 373 P.2d 944, 946 (1962). However, under the special conduct exception, a hospital may be held liable when it commits independent acts of negligence. *See Harper*, 140 P.3d at 275–76; *Moon*, 150 Colo. at 432, 373 P.2d at 945 (a hospital cannot be held liable for the negligence of its

physicians unless it knows an employee lacks sufficient skills or makes itself responsible for malpractice through special conduct or negligence); *Rosane v. Senger*, 112 Colo. 363, 366, 149 P.2d 372, 374 (1944); *Camacho v. Mennonite Bd. of Missions*, 703 P.2d 598, 600 (Colo.App.1985) ("the hospital itself may be liable for its negligence to supervise adequately and review the performance of the members of its medical staff").

 The physicians involved here were not DHHA employees. Thus, DHHA did not hire them, much less hire them negligently. Although the "Agreement Concerning Housestaff" between DHHA and the University gives DHHA responsibility of retaining, supervising, and training the physicians, Ms. Villalpando did not submit an affidavit or other evidence indicating it did so negligently. Therefore, we conclude the special conduct exception does not apply. *See Kinney*, 128 P.3d at 310.

Ms. Villalpando also contends section 24–10–110(1)(a), C.R.S.2007, provides a statutory exception to the corporate practice of medicine doctrine. However, that statute provides that the public entity is responsible for paying the costs, judgments, and settlements of its public employees. *See Middleton v. Hartman*, 45 P.3d 721, 728 (Colo.2002) (section 24–10–110(1)(a) is a voluntary undertaking by the state to provide defense costs for its employees when those employees act within the scope of their duties).

Moreover, the exception to the corporate practice of medicine doctrine for a physician-formed professional services corporation that was recognized in *Russell* has been overturned by the legislature, and thus is inapplicable. *See* § 12–36–134; *Estate of Harper*, 140 P.3d at 276.

Because Ms. Villalpando did not present evidence creating a genuine issue of material fact whether DHHA's conduct fell within the special conduct exception, we conclude the district court did not err in granting DHHA's motion for summary judgment.

### B. Negligent Acts of Non–Physician Employees

 Ms. Villalpando also contends Colorado law permits her claim against DHHA

for negligence committed by non-physician employees. The trial court dismissed this claim based on Ms. Villalpando's failure to identify any non-physician employees, or any particular act or omission committed by them that would give rise to liability, despite having possession of the deceased's medical records for approximately seven years. Because Ms. Villalpando had the burden to establish this claim and failed to do so, we conclude the trial court did not err in entering summary judgment in favor of DHHA. *See Andersen,* 160 P.3d at 239; *Kinney,* 128 P.3d at 310.

We also reject Ms. Villalpando's contention DHHA is vicariously liable for the willful and wanton conduct of its public employees. *See Middleton v. Hartman,* 45 P.3d at 728 ("[a]ccording to the express language of section 24–10–110(1)(b)(I), the state is not liable for its employees' willful and wanton conduct").

### IV. Attorney Fees and Costs

Finally, Ms. Villalpando contends the trial court erred in granting the physicians' motion for attorney fees and costs. We disagree.

Section 13–17–201 requires an award of reasonable attorney fees in all actions brought as a result of death or injury to person or property occasioned by the tort of any person, where any such action is dismissed on a C.R.C.P. 12(b) motion prior to trial. This section is applicable to a motion to dismiss a CGIA action. *See Smith v. Town of Snowmass Village,* 919 P.2d 868, 873 (Colo.App.1996).

Ms. Villalpando contends an award of attorney fees and costs is inappropriate and premature because the trial court erred in dismissing the claims against the physicians. However, we have concluded the trial court properly dismissed these claims.

While the award of fees under section 13–17–201 may lead to harsh consequences in particular cases, that is an issue for the General Assembly, not this court, to resolve.

*See Town of Snowmass Village,* 919 P.2d at 873.

The judgments are affirmed.

Judge WEBB and Judge LOEB concur.