Richard A. SCHMIDT, M.D., Plaintiff–Appellee,

v.

Alden H. HARKEN, M.D., and John Whitesel, M.D., Defendants–Appellants.

No. 00CA0270.

Colorado Court of Appeals, Div. II.

Feb. 15, 2001.

Snell & Wilmer, LLP, James D. Kilroy, Denver, CO, for Plaintiff–Appellee.

Hogan & Hartson, L.L.P., Kathryn W. Bradley; Senter, Goldfarb & Rice, LLC, Thomas S. Rice, Eric M. Ziporin; Denver, CO, for Defendants–Appellants.

Opinion by Judge CASEBOLT.

Defendants, Alden H. Harken and John Whitesel, appeal the order of the trial court denying their motion to dismiss, pursuant to the Colorado Governmental Immunity Act (CGIA), the claims filed by plaintiff, Richard A. Schmidt. We reverse and remand with directions.

Plaintiff, a former professor at the University of Colorado Health Sciences Center School of Medicine (UCHSC), asserted claims against defendants, both employees of UCHSC, for tortious interference with contract, tortious interference with prospective economic advantage, and civil conspiracy. The claims arose from the University's decision not to reappoint plaintiff to his faculty position.

Plaintiff served notice of his claims on the Chancellor of UCHSC, the Board of Regents, the dean of the School of Medicine, and defendants. He did not serve a notice upon the state attorney general.

Contending that they were employees of the state of Colorado or of an arm of the state for purposes of the CGIA and that plaintiff had failed properly to serve notice of his claim upon the attorney general, defendants requested dismissal. Concluding that notice was proper under the CGIA, the trial court denied the motion. This interlocutory appeal, authorized under § 24–10–118(2.5), C.R.S.2000, followed.

On appeal, defendants reiterate their contention that the University of Colorado is the "state" for purposes of the CGIA's notice provision, § 24–10–109(3), C.R.S.2000. They assert, therefore, that plaintiff was required to give notice to the attorney general and his failure to do so bars his claims against them. We agree.

Statutory construction involves a question of law. Accordingly, we are not bound by the trial court's conclusion. *Fogg v. Macaluso,* 892 P.2d 271 (Colo.1995).

■ In interpreting a statute, we must give effect to the intent of the General Assembly. *See Dawson v. Reider,* 872 P.2d 212 (Colo.1994). To discern that intent, we look to the language employed in the statute. If the words used are plain and unambiguous, our task is accomplished by giving effect to the commonly accepted meaning of the words used. *Brock v. Nyland,* 955 P.2d 1037 (Colo. 1998).

■ A strained or forced construction of a statutory term is to be avoided, and we must look to the context in which a statutory term is employed. *Miller v. Byrne,* 916 P.2d 566 (Colo.App.1995). Further, we must construe the statute as a whole so as to give consistent, harmonious, and sensible effect to all its parts and, if possible, give effect to every word in the statute. *City of Grand Junction v. Sisneros,* 957 P.2d 1026 (Colo. 1998).

■ Subject to limitations not at issue here, the CGIA waives immunity for certain tort claims brought against a public entity and its employees. Under the CGIA, a person seeking to recover against the state or another public entity must provide written notification of a claim within 180 days of the discovery of the injury. Section 24–10–109(1), C.R.S.2000. Because the CGIA notice provisions are jurisdictional, failure to give notice to the proper person or entity bars a plaintiff's claims. *See Jefferson County Health Services Ass'n v. Feeney,* 974 P.2d 1001 (Colo.1998); *Brock v. Nyland, supra.*

The entity to which notice must be given is specified in § 24–10–109(3), which provides:

If the claim is against the state or an employee thereof, the notice shall be filed with the attorney general. If the claim is against any other public entity or an employee thereof, the notice shall be filed with the governing body of the public entity. . . .

■ The CGIA does not define which public entities are considered the "state," nor has any other Colorado case discussed this issue. However, other provisions of the CGIA guide our analysis.

Section 24–10–112, C.R.S.2000, which describes how a claim against the state may be compromised under the CGIA, provides that:

(1)(a)(I) A claim against the state may be compromised or settled for and on behalf of the state by the attorney general, with the concurrence of the head of the affected department, agency, board, commission, institution, hospital, college, university, or other instrumentality thereof. . . .

(2) Claims against public entities, other than the state, may be compromised or settled by the governing body of the public entity or in such a manner as the governing body may designate.

This provision expressly categorizes a claim against a public university as a claim against the state and authorizes the attorney general to settle such claims with the concurrence of the head of the university. Hence, because we must construe statutes to give consistent and harmonious effect to the entire statutory scheme, it follows that the University of Colorado must be considered to be the "state" for purposes of the notice provision at issue. *See Graven v. Vail Associates, Inc.,* 909 P.2d 514 (Colo.1995).

■ We further note that one of the purposes of the notice requirement of the CGIA is to allow a public entity to prepare a defense and/or work toward settlement of a claim. *Jefferson County Health Services Ass'n v. Feeney, supra.* Because the attorney general of the state is the legal counsel and advisor to the University, its president, and board of regents, *see* § 23–20–110, C.R.S.2000, it follows that the office of the attorney general would receive notice of claims asserted against the University.

In addition, we note that the Colorado constitution declares the University of Colorado at Boulder and Denver to be among the "state institutions of higher education," and provides that the establishment, management, and abolition of such state institutions are subject to the control of the state. *See* Colo. Const. art. 8, § 5.

Plaintiff relies upon § 24–10–103(5), C.R.S. 2000. He notes that this provision defines a "public entity" as "the state, county, city and county . . . and every other kind of district,

agency, instrumentality, or political subdivision thereof." He asserts that, because the "state" is *a* "public entity," all other entities described in that statute must necessarily be *"other* public entities" within the meaning of § 24–10–109(3). Under this interpretation, however, numerous entities, branches, or agencies commonly considered to be the "state," such as the office of the governor, the General Assembly, and this court, would not be considered the state for purposes of the CGIA. Such a reading would not make sense, a result to be avoided in statutory construction. *See Anderson v. M.W. Kellogg Co.,* 766 P.2d 637 (Colo.1988).

Plaintiff's related contention that "the state, for purposes of the CGIA notice requirement, is exactly what it purports to be: the State of Colorado, and the State of Colorado alone," begs the question. The issue is what the "state" *means* or includes in § 24–10–109(3). Moreover, plaintiff does not explain exactly what the term "state" would cover under his reading of the CGIA. In addition, this contention ignores the fact that the state acts through its agencies and employees, whose actions may subject the state to liability. *See Cobbin v. City & County of Denver,* 735 P.2d 214 (Colo.App.1987).

Plaintiff's reading is also negated by § 24–10–112, analyzed above, which indicates that the attorney general, the lawyer for the state of Colorado, is authorized to compromise claims asserted against state agencies. The clear implication is that the "state" includes state agencies. And, we note that a division of this court in *Hartman v. Regents of the University of Colorado,* 22 P.3d 524 (Colo. App.2000), recently held, although in another context, that the University of Colorado is a state agency.

Plaintiff further argues that, because statutes dealing with the creation and operation of a risk management fund, §§ 24–30–1501 to 24–30–1520, C.R.S.2000, specifically exclude the University of Colorado from participation in the fund, the General Assembly did not consider it to be the "state." We disagree.

The risk management fund was established to provide a self-insurance fund "to protect the state and its employees against claims brought under the [CGIA]." Section 24–30–

1501, C.R.S.2000. Although the University of Colorado is expressly excluded from participation in the fund, *see* § 24–30–1517(2), C.R.S.2000, contrary to plaintiff's view of the statute we conclude that the legislative decision to exclude the University recognizes that, barring express exclusion, the University *would* be covered by the fund because it *is* part of the "state" that the fund was designed to protect.

Further, as we read the statute, the exclusion of the University from the risk management fund does not operate to change the scope of the word "state" in the CGIA. Rather, it merely excludes the University from participation in the fund.

Plaintiff's reliance upon § 2–4–401(14), C.R.S.2000, is unavailing. That statute defines "state, when applied to a part of the United States, to include any state, district, commonwealth, territory ... and any area subject to the legislative authority of the United States of America." This definition simply provides no guidance and is inapplicable here.

Plaintiff's reliance upon *State v. Zahourek,* 935 P.2d 74 (Colo.App.1996), *aff'd sub nom. Graham v. State,* 956 P.2d 556 (Colo.1998), and *Uberoi v. University of Colorado,* 713 P.2d 894 (Colo.1986), is also misplaced. In *Zahourek,* a division of this court examined whether the University of Northern Colorado (UNC) was a "public entity" entitled to the protection of the CGIA. In concluding that it was, the division stated that UNC was a "district, agency, instrumentality, or subdivision of the state." *State v. Zahourek, supra,* 935 P.2d at 78. Contrary to plaintiff's contention, this does not indicate that the division must have concluded that UNC is something other than the "state" under the CGIA notice provision. Indeed, the *Zahourek* court did not examine the notice provisions at issue here.

The *Uberoi* decision is likewise not helpful. There, the supreme court held that the University was a "public entity," and thus, the CGIA was applicable to claims asserted against it. To the extent it addressed the issue of notice, the court noted only that notice of a claim against the University was

**38**

required by the CGIA. Because the court was not presented with any issue concerning to whom the notice must be given, to the extent the decision could be read to indicate that the University was not the "state" within the meaning of § 24–10–109(3), such a conclusion would be *dictum*, and thus not binding here.

Accordingly, plaintiff was required to give notice of his claims against defendants to the attorney general, and his failure to provide such notice prevents him from asserting a claim. *See Brock v. Nyland, supra*. Thus, the trial court erred in denying defendants' request for dismissal of the claims against them.

In view of our disposition, we need not address defendants' remaining arguments that the University is an "arm of the state" for purposes of the CGIA.

The judgment is reversed, and the cause is remanded to the trial court with directions to enter judgment in favor of defendants.

PLANK and JONES, JJ., concur