Deborah E. BOOTH, Plaintiff–Appellee,

v.

UNIVERSITY OF COLORADO, an Institution of the State of Colorado, Defendant–Appellant.

No. 01CA1577.

Colorado Court of Appeals, Div. IV.

Nov. 7, 2002.

Certiorari Granted Feb. 24, 2003.

Stone, Sheehy, Rosen & Byrne, P.C., Andrew Rosen, Boulder, Colorado, for Plaintiff–Appellee.

Office of University Counsel, Joanne M. McDevitt, David P. Temple, Michael W. Schreiner, Boulder, Colorado, for Defendant–Appellant.

Opinion by Judge NEY.

Defendant, the University of Colorado, appeals from the trial court's order denying its motion to dismiss the complaint of plaintiff, Deborah E. Booth. We affirm.

On October 8, 1998, plaintiff, while sitting in a classroom at the University of Colorado at Boulder, was injured when a dry erase board fell over, pinning her to her desk.

Plaintiff brought this action seeking compensation for the injuries she sustained.

Defendant moved to dismiss plaintiff's complaint for lack of jurisdiction under the Colorado Governmental Immunity Act (GIA), § 24–10–101, et seq., C.R.S.2001. Defendant asserted that the dry erase board was not a "dangerous condition" of a public building for purposes of a waiver of immunity under § 24–10–106(1)(c), C.R.S.2001. Relying on a decision by a division of this court in *Reynolds v. State Board for Community Colleges & Occupational Education*, 937 P.2d 774 (Colo.App.1996), defendant argued that the board must be a "fixture" in the building to constitute a dangerous condition.

Defendant subsequently moved to dismiss plaintiff's complaint on the basis that she did not serve her notice of claim in compliance with § 24–10–109, C.R.S.2001. In particular, relying on the decision in *Schmidt v. Harken,* 42 P.3d 34 (Colo.App.2001), defendant argued that the notice was defective because plaintiff did not serve it on the Colorado Attorney General as required by § 24–10–109(3), C.R.S.2001.

The trial court conducted an evidentiary hearing and denied both motions. Specifically, as to whether the dry erase board constituted a dangerous condition, the court found that: (1) the board constituted a physical condition of a public facility or the use thereof; (2) the condition created an unreasonable risk to the health or safety of the public; (3) defendant knew or should have known in the exercise of reasonable care that the condition existed; and (4) the condition was a direct result of the action or omission of defendant in maintaining the facility. As to whether the notice provided was adequate, the court found that: (1) the decision in *Schmidt v. Harken, supra,* should not be given retrospective application; (2) the notice was received by the Office of University Counsel within the 180–day limitation established by § 24–10–109(1), C.R.S.2001; (3) the attorneys in the Office of University Counsel were special assistant attorneys general, appointed by the Colorado Attorney General; and (4) receipt of the notice by the Office of University Counsel constituted receipt by the Colorado Attorney General in accordance with the decision in *Schmidt v. Harken, supra.*

Defendant then brought this interlocutory appeal pursuant to § 24–10–108, C.R.S.2001.

## I. Notice of Claim

■ Defendant contends that the trial court erred in failing to determine that plaintiff's claims were barred because she failed to comply with the notice of claim requirements set forth in § 24–10–109. We disagree.

### A. Applicable Standards

■ Section 24–10–109(1) requires that a claimant provide written notice of claim to the public entity within 180 days from the date of the discovery of the injury. Because compliance with the 180–day notice limitation is a jurisdictional prerequisite to suit, failure to provide the notice to the proper person or entity within that time bars a plaintiff's claims. *Reg'l Transp. Dist. v. Lopez,* 916 P.2d 1187 (Colo.1996).

Section 24–10–109(3) governs to whom the notice must be sent and provides:

> If the claim is against the state or an employee thereof, the notice shall be filed with the attorney general. If the claim is against any other public entity or an employee thereof, the notice shall be filed with the governing body of the public entity
>
> . . . .

■ The failure to comply with § 24–10–109(3) gives rise to an affirmative defense that must be timely raised by the defendant. *Brock v. Nyland,* 955 P.2d 1037 (Colo.1998).

In *Schmidt v. Harken, supra,* a division of this court held that the University of Colorado constituted the "state" for purposes of the notice provisions of the GIA. Therefore, the division concluded that pursuant to § 24–10–109(3), the plaintiff must serve the notice of claim on the Colorado Attorney General. The division specifically rejected the plaintiff's argument that because "the state" is defined as a "public entity" under § 24–10–103(5), C.R.S.2001, of the GIA, all other entities described in that section must necessarily be "other public entities" within the meaning of § 24–10–109(3). The division noted

that under this interpretation, numerous entities, branches, or agencies commonly considered the state·would not be considered the state for purposes of the GIA. Accordingly, the division found that such a reading would be nonsensical.

Even if we assume that the decision in *Schmidt v. Harken, supra,* may be given retrospective application, based on the reasons set forth below, we conclude that the notice of claim provided by plaintiff satisfied the notice requirements of the GIA.

### B. Application of § 24–10–109(3)

■ A plaintiff must strictly comply with the notice requirements of § 24–10–109(3) regarding to whom the notice of claim is sent. *See Brock v. Nyland, supra,* 955 P.2d at 1041 (court held that because the plain language of § 24–10–109(3) "is clear and unambiguous, we cannot interpret this provision to permit the filing of a notice of claim with any person or entity other than those set forth in the statute"); *Curlin v. Reg'l Transp. Dist.,* 983 P.2d 178 (Colo.App.1999)(failure to comply with § 24–10–109(3) mandates dismissal of an action absent a showing that the public entity waived or should be estopped from raising the failure to comply as a bar to suit).

In *Brock v. Nyland, supra,* the supreme court held that compliance with § 24–10–109(3) is not jurisdictional and therefore the doctrines of waiver and estoppel can be applied to validate a notice that does not comply with the statute. The court noted that there was no evidence in that case that the notice had been forwarded to either the governing body or its attorney prior to the expiration of the 180–day period. The court also agreed that the notice of claim statute did not prohibit the governing body of the public entity from appointing one or more agents to receive the statutory notice on its behalf.

Here, the plaintiff sent her notice of claim to the University of Colorado on January 20, 1999, less than four months after plaintiff was injured by the dry erase board. It is undisputed that plaintiff did not send a copy of this notice to the Colorado Attorney General. However, the record indicates that the Office of University Counsel received the notice of claim on January 21, 1999, which was well within the 180–day notice period required by the GIA.

Plaintiff also presented evidence that in February 1983, the Board of Regents entered into a memorandum of understanding with the Colorado Attorney General whereby the Colorado Attorney General transferred all responsibility for the University of Colorado for court proceedings to the Office of University Counsel. It was agreed that University Counsel would "serve in the capacity of special assistant Attorney General."

Following that agreement, any notice of claim that was served on the Attorney General would prompt a response to the claimant that provided:

> This letter acknowledges receipt of your notice of claim. However, you are advised that this office does not represent the University of Colorado, its Board of Regents or University Hospital. Your future contact concerning your claim should be with their representatives.

At the same time, the Colorado Attorney General would send a letter to University Counsel, which contained the following language:

> Pursuant to the agreement between our offices, I am forwarding a copy of the notice of claim to you for such action as you deem appropriate. Unless we are advised to the contrary, it is our understanding that either your office or the University's insurance counsel will handle the representation of the interests of the University of Colorado, the Board of Regents or University Hospital in this case.

University Counsel would then send out the following notice to the claimant or the claimant's attorney:

> As University Counsel I serve as a Special Assistant Attorney General and am responsible for handling all claims involving the University. Please direct all future correspondence to this office, including any pleadings, should you decide to [pursue a claim].

The notice from the Colorado Attorney General specifically advised a claimant that

the Colorado Attorney General did not represent the University of Colorado and that any contact regarding the claim should be with the University of Colorado's representatives. This position was consistent with the letter University Counsel would send to a claimant. Thus, the correspondence with the Attorney General and University Counsel would lead a reasonable party, especially one that had been involved with a previous claim against the University of Colorado, to believe that any legal documents should be sent to University Counsel. Additionally, as the above documents make evident, the Office of the Attorney General essentially delegated all responsibility for handling claims involving the University of Colorado to University Counsel. Although the documents do not make an express delegation of the receipt of notice of claims to the University Counsel, such delegation is implicit in the documents, which also designate University Counsel as "special assistant Attorney General."

Based on this evidence and because it is undisputed that University Counsel received the notice of claim before expiration of the 180–day notice period under the GIA, we conclude that the trial court did not err in finding that defendant was estopped from arguing that plaintiff failed to comply with the requirements of § 24–10–109(3). Hence, the court did not err in refusing to dismiss the action based on plaintiff's noncompliance with that provision. *See Brock v. Nyland, supra; Curlin v. Reg'l Transp. Dist., supra.*

## II. Dangerous Condition

■ Defendant next contends that the trial court erred in finding that plaintiff had established that the dry erase board constituted a dangerous condition of a public building. We disagree.

Section 24–10–106(1)(c) provides that "[s]overeign immunity is waived by a public entity in an action for injuries resulting from ... a dangerous condition of any public building." This waiver of immunity applies if the alleged injuries occurred as a result of: (1) the physical condition of a public facility or the use thereof; (2) which constitutes an unreasonable risk to the health or safety of the public; (3) which is known to exist or should have been known to exist in the exercise of reasonable care; and (4) which condition is proximately caused by the negligent act or omission of the public entity in constructing or maintaining the facility. Section 24–10–103(1), C.R.S.2001; *Springer v. City & County of Denver,* 13 P.3d 794 (Colo.2000). However, the dangerous condition "shall not exist solely because the design of any facility is inadequate." Section 24–10–103(1); *Medina v. State,* 35 P.3d 443 (Colo.2001)(whether an injury resulting from a dangerous condition is caused by a failure to maintain or by inadequate design depends on the time at which the dangerous condition arose).

In *Padilla v. School District No. 1,* 25 P.3d 1176 (Colo.2001), the supreme court noted that, broadly construed, the term "maintenance" encompasses ongoing repair and upkeep of the facility as it is put to the original use or additional or different uses than originally constructed. The court also noted that the term "constructing" includes the facility as originally constructed, but also encompasses permanent or temporary alterations to the facility made during its ensuing lifetime in service to the public.

As to the first factor, we reject defendant's contention that the dry erase board did not constitute a physical condition of a public building. Relying on the decision by a division of this court in *Reynolds v. State Board for Community Colleges & Occupational Education, supra,* defendant argues that the board must have constituted a fixture in order for its immunity to be waived under § 24–10–106(1)(c). However, we note that there was evidence that the board that fell on plaintiff would normally have been affixed to a wall. Thus, under these circumstances, plaintiff's injuries were directly attributable to the failure to secure the board properly. As such, we find *Reynolds* to be distinguishable.

In any event, in more recent cases, the supreme court has not required that the physical condition be a fixture for waiver of immunity under § 24–10–106(1)(c). For example, in *Walton v. State,* 968 P.2d 636 (Colo. 1998), the supreme court held that the dangerous condition resulted from the use of an unsecured ladder on a slippery floor to ac-

cess a loft for maintenance. Similarly, in *Jenks v. Sullivan*, 826 P.2d 825, 829 (Colo. 1992), *overruled in part by Bertrand v. Board of County Commissioners*, 872 P.2d 223 (Colo.1994), the supreme court cited a decision by the Missouri Supreme Court that a dangerous condition existed when the plaintiff was injured after falling off a ladder and onto a folding room divider placed at the foot of the ladder. The Missouri Supreme Court held that the "placement of the partition against the ladder created a physical deficiency in the state's property which constituted a 'dangerous condition.'" *Alexander v. State*, 756 S.W.2d 539, 542.

Although the mere fact of injury does not necessarily satisfy the second factor, we conclude that the evidence presented supports the trial court's determination that the board, as situated, constituted an unreasonable risk to the health and safety of the public. Because the board was not secured, it fell over when it was bumped by a student. Additionally, it was of such a size that it took several people to lift it off plaintiff.

As to the third factor, there was evidence that the board had been present in the classroom for some time and that the room had been used by several professors for their classes. Additionally, there was evidence that the room had been cleaned on a nightly basis. This evidence demonstrated an opportunity for defendant to have discovered the risk posed by the board.

Finally, as to the fourth factor, plaintiff presented evidence that the board had been purchased as part of the renovation of another classroom. An invoice from the construction company in charge of the renovation showed that it had ordered a dry erase board for the renovation, although installation of the board was not part of the construction company's contract. Thus, there is evidence that the dangerous condition created by the placement of the dry erase board was caused by activities associated with the construction and maintenance of the classroom. *See Springer v. City & County of Denver, supra*

(holding that the city "constructed" the theater when it employed the services of an independent contractor).

Therefore, we conclude that the record is sufficient to support the trial court's determination that the dry erase board constituted a dangerous condition of a public building for purposes of § 24–10–106(1)(c).

The order is affirmed.

Judge ROTHENBERG and Judge VOGT concur.