**THE UNIVERSITY OF COLORADO,**
an institution of the State of
Colorado, Petitioner,

v.

Deborah Eileen BOOTH, Respondent.

No. 02SC738.

Supreme Court of Colorado,
En Banc.

Nov. 3, 2003.

Joanne M. McDevitt, Michael W. Schreiner, David P. Temple, Denver, Colorado, Attorneys for Petitioner.

Andrew Rosen, Boulder, Colorado, Attorney for Respondent.

Friedrick C. Haines, Christine K. Wilkinson, Denver, Colorado, Attorneys for Amicus Curiae, State of Colorado.

Justice HOBBS delivered the opinion of the court.

We granted certiorari in this case to review the court of appeals decision in *Booth v. University of Colorado*, 64 P.3d 926 (Colo. App.2002).[1] We affirm. We hold that timely filing of a notice of claim upon the Board of Regents of the University of Colorado ("University") complies with the Colorado Governmental Immunity Act's ("GIA") notice provisions set forth in section 24–10–109(3), 7B C.R.S. (2002).[2]

## I.

In October of 1998, a dry erase board—not properly secured to a classroom wall at the University of Colorado—collapsed and struck Deborah Eileen Booth, a student at the University, in the head while she was sitting at her desk. Booth suffered serious injury. Well within the required 180-day period specified by section 24–10–109(1), 7B C.R.S. (2002),[3] she filed her notice of claim with the University's Board of Regents, which transmitted the notice to its Office of University Counsel the next day.[4]

Moving to dismiss the personal injury lawsuit Booth subsequently filed, the University alleged that section 24–10–109(3) required Booth to file the notice of claim with the Colorado Attorney General instead of the Board of Regents.

The University's argument relied—as it does here—on *Schmidt v. Harken*, 42 P.3d 34 (Colo.App.2001), holding that a claimant against the University must file the GIA notice of claim with the Attorney General. The court of appeals decided *Schmidt* after Booth filed her notice with the University's Board of Regents.

The trial court found Booth's notice of claim proper for three reasons: (1) the decision in *Schmidt v. Harken* should be applied prospectively only; (2) the Office of University Counsel received the notice of claim within the 180–day limitation established by section 24–10–109(1); and (3) the Colorado Attorney General had appointed the Office of University Counsel attorneys as special assistant Attorneys General and, therefore, notice to the Office of University Counsel was notice to the Attorney General for *Schmidt* purposes. *Booth*, 64 P.3d at 927.

---

1. We granted certiorari on the following issues:
 1. Whether the court of appeals erred when it held that a notice of claim against the University met the notice requirements of section 24–10–109(3), 7B C.R.S. (2002).
 2. Whether the court of appeals erred in concluding that the University was estopped from objecting to the sufficiency of notice required by section 24–10–109(3), 7B C.R.S. (2002).

 Because the notice complied with statutory requirements, we do not address the second issue.

2. Section 24–10–109(3) reads:
 If the claim is against the state or an employee thereof, the notice shall be filed with the attorney general. If the claim is against any other public entity or an employee thereof, the notice shall be filed with the governing body of the public entity or the attorney representing the public entity. Such notice shall be effective upon mailing by registered mail or upon personal service.
 § 24–10–109(3), 7B C.R.S. (2002).

3. Section 24–10–109(1) states in pertinent part: "[a]ny person claiming to have suffered an injury by a public entity ... shall file a written notice as provided in this section within one hundred eighty days after the date of the discovery of the injury." § 24–10–109(1), 7B C.R.S. (2002).

4. The GIA governs tort actions against a public entity. *See generally* § 24–10–101 to –120, 7B C.R.S. (2002). The University of Colorado is a public entity within the GIA's scope. *Uberoi v. Univ. of Colorado*, 713 P.2d 894 (Colo.1986).

In affirming the trial court, the court of appeals relied upon a Memorandum of Understanding ("MOU") executed February 1983 between the Board of Regents and the Attorney General. The MOU transferred from the Attorney General to the Office of University Counsel all responsibility for court proceedings involving the University. The MOU states that the Office of University Counsel will "represent the Board of Regents and the University in court proceedings, ... [and] serve in the capacity of special assistant Attorney General." The MOU identifies the Office of University Counsel as "structurally part of the Central Administration of the University of Colorado."

Under the MOU, if the Attorney General received a notice of claim against the University it would provide a letter to the claimant stating, "this office does not represent the University of Colorado, ... Your future contact concerning your claim should be with their representatives." The Attorney General would also send a letter to the Office of University Counsel that provided:

> Pursuant to the agreement between our offices, I am forwarding a copy of the notice of claim to you for such action as you deem appropriate. Unless we are advised to the contrary, it is our understanding that either your office or the University's insurance counsel will handle the representation of the interests of the University of Colorado, the Board of Regents or University Hospital in this case.

*Booth,* 64 P.3d at 928. The Office of University Counsel would then send a letter to the claimant, informing the claimant that the Office of University Counsel served as a special assistant Attorney General and asking the claimant to direct all future correspondence to their office. *Id.*

Pointing to the record and the trial court's finding that the Office of University Counsel received Booth's notice of claim within the required 180–day period, the court of appeals applied estoppel against the University's argument that Booth had failed to file her notice of claim with the Attorney General. *Id.* at 929. We affirm the judgment of the court of appeals, on different grounds.

## II.

We hold that the GIA allows a claimant against the University of Colorado to file her notice of claim with the Board of Regents as the University's governing body, or the Attorney General as the Board's statutory attorney, pursuant to section 24–10–109(3). Booth complied with the statute by filing her timely notice of claim with the Board of Regents.

### A.

#### GIA Notice of Claim Under Section 24–10–109(3)

 When construing a statute, our fundamental responsibility is to give effect to the General Assembly's intent. *Mortgage Inv. Corp. v. Battle Mountain Corp.,* 70 P.3d 1176, 1183 (Colo.2003). In applying the GIA, we strictly construe legislative grants of immunity and broadly construe legislative immunity waivers. *Corsentino v. Cordova,* 4 P.3d 1082, 1086 (Colo.2000).

 The purpose of the GIA timely notice provision, section 24–10–109(3), is to "recognize and insure that the 'governing body' or its 'attorney' be directly involved, advised, and notified of potential litigation." *Brock v. Nyland,* 955 P.2d 1037, 1041 (Colo.1998). Timely notice to the appropriate governing body or attorney provides the opportunity for correction of a dangerous condition, investigation and settlement of the claim before the litigation ensues, or preparation of a lawsuit defense in the event of litigation. *Woodsmall v. Reg'l Transp. Dist.,* 800 P.2d 63, 68 (Colo.1990).

 Failure to meet the 180–day window for filing the notice of claim set forth in section 24–10–109(1) is jurisdictional. *Brock,* 955 P.2d at 1043. In contrast, failure to file the notice of claim with the appropriate officer or entity under section 24–10–109(3) gives rise to an affirmative defense. *Id.*

In *Brock,* the injured person filed notice of claim with the claims department of the Regional Transportation District ("RTD"), but there was no factual demonstration in the case that: (1) the claims department was

"the agent for the RTD governing board or attorney" to receive the notice of claim; or (2) the RTD Board or its attorney had "actual notice of the claims within the 180–day period for notification under section 24–10–109(1)." *Id.* at 1044.

In the case before us, the facts are that: (1) the Board of Regents is the governing body of the University of Colorado;[5] (2) Booth filed her notice of claim with the Board of Regents within the required 180–day period; (3) the Office of University Counsel received the notice within the 180–day period; and (4) the MOU between the Regents and the Attorney General makes the Office of University Counsel the responsible agent for dealing with GIA notices of claim against the University.

Nevertheless, the University argues that its injured student may not maintain her personal injury lawsuit, because she did not file her notice of claim with the Attorney General. Citing that portion of *Brock* which requires injured persons to direct their notice of claim to the appropriate person, *Brock*, 955 P.2d at 1043, the University argues that it is the "state," and the notice of claim must go to the Attorney General under section 24–10–109(3). In pertinent part, this provision states:

> If the claim is *against the state* or an employee thereof, the notice shall be filed *with the attorney general.* If the claim is against *any other public entity* or an employee thereof, the notice shall be filed with the *governing body* of the public entity or the *attorney representing the public entity.*

§ 24–10–109(3), 7B C.R.S. (2002) (emphasis added).

5. Colo. Const. art. IX, § 12; § 23–20–102(1), 7A C.R.S. (2002). Article 20 of title 23 addresses the University of Colorado. Section 23–20–102(1) provides: "[t]he University shall be governed by a board of nine regents ..."

6. § 23–20–110, 7A C.R.S. (2002) provides: "[t]he attorney general of the state shall be the legal advisor of the president and board of regents of the university, and he shall institute and prosecute or defend all suits in behalf of the same."

7. The full definition provided in section 24–10–103(5) states:

In seeking to characterize itself as the "state" and not a "public entity other than the state," the University overlooks the fact that the GIA makes a distinction between the "state" and an "instrumentality" of the state organized by law, which is treated as a "public entity other than the state" for GIA notice of claim purposes. Viewing the statute as a whole and the evident legislative purposes, we determine that a claimant against the University of Colorado may file her notice of claim, pursuant to section 24–10–109(3), with the Board of Regents as the governing body of the University or the Attorney General, who is statutory counsel to the Board of Regents.[6]

### B.

### "State" versus "Public Entity Other than the State"

When construing a statute we look to the statutory design as a whole, giving effect to the language of each provision and section, harmonizing apparent conflicts, if possible. *Board of County Comm'rs v. Park County Sportsmen's Ranch, LLP*, 45 P.3d 693, 711 (Colo.2002).

Section 24–10–103(5) of the GIA defines a "public entity" as the "state ... and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law." Thus, section 24–10–103(5) recognizes that the term "public entity" consists of a variety of public bodies in addition to the state, including an "instrumentality" of the state organized pursuant to law.[7]

> "Public entity" means the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof organized pursuant to law and any separate entity created by intergovernmental contract or cooperation only between or among the state, county, city and county, municipality, school district, special improvement district, and every other kind of district, agency, instrumentality, or political subdivision thereof.
> § 24–10–103(5), 7B C.R.S. (2002).

■ Section 24–10–112(1)(a)(I) repeats the reference to "instrumentality" in referring to a "... university, or other instrumentality" of the state, requiring in the instance before us that the Attorney General obtain the concurrence of the head of the University in order to compromise or settle a case. Section 24–10–112(2) provides that "[c]laims against public entities, other than the state, may be compromised or settled by the governing body of the public entity or in such manner as the governing body may designate."[8] The University of Colorado has its own governing body, the Board of Regents, and is a "public entity" within the meaning of the GIA. *Uberoi v. University of Colorado*, 713 P.2d 894, 898 (Colo.1986). As we pointed out in *Uberoi*, the University of Colorado's "body politic" is the Board of Regents, established by the constitution. *Id.* at 898. *See also* Colo. Const. art. IX, § 12.

Construing all of these sections together, we conclude that the General Assembly anticipated that a claimant, such as Booth, can file her notice of claim with the governing body of an instrumentality of the state or with its attorney. The University is an instrumentality of the state for GIA purposes.

Section 23–20–110 designates the Attorney General as the legal advisor to the president and the Board of Regents. Thus, under section 24–10–112(2), Booth could also have filed her notice of claim against the University with the Attorney General, attorney to the Board of Regents.

Other sections of the GIA also treat the University of Colorado as if it were a public entity other than the state. Section 24–30–1517(2) exempts the University of Colorado from all of part 15 of article 30,[9] the state's insurance fund.[10] GIA section 24–10–115 provides the authority for public entities other than the state to obtain insurance. Having been exempted from the state's insurance fund, the University of Colorado may obtain its own insurance, consistent with being an entity other than the state.

The General Assembly has recognized that the University makes its own choices in obtaining insurance, settling claims, and defending lawsuits seeking payment under the GIA.[11] The MOU between the Regents and

8. The full text of section 24–10–112 reads:
(1)(a)(I) A claim against the state may be compromised or settled for and on behalf of the state by the attorney general, with the concurrence of the head of the affected department, agency, board, commission, institution, hospital, college, university, or other instrumentality thereof, except as provided in part 15 of article 30 of this title.
(2) Claims against public entities, other than the state, may be compromised or settled by the governing body of the public entity or in such manner as the governing body may designate.
§ 24–10–112, 7B C.R.S. (2002).

9. Section 24–30–1517(2) provides: "[n]othing in this part 15 shall apply to the university of Colorado at Boulder, Denver, and Colorado Springs and the university of Colorado health sciences center."

10. Section 24–10–116 of the GIA requires the state to obtain insurance. The section cross-references to part 15 of article 30 which sets up the Division of Risk Management, the state's insurance fund. In contrast, section 24–10–115 of the GIA provides the authority for public entities other than the state to obtain insurance. It follows that any entity not covered by the state's insurance fund falls within the provisions of section 24–10–115, insurance for entities other than the state.

11. On the Senate's second reading of H.B. 85–1001, the bill's sponsor, Senator Wells, recognized that the University of Colorado was exempted from the state's Division of Risk Management. The Division of Risk Management was created in response to the state's insurance carrier canceling its policy in the mid 1980s. At the time, the University of Colorado maintained its own insurance policy separate from the state; thus, the University's policy was not cancelled along with the state's policy.

Senator Donley expressed concern that should the University cancel its insurance it would be left without coverage, and introduced an amendment that would allow the University to again purchase its own coverage, or to opt for coverage under the state's policy. In doing so, Senator Donley still recognized the University's autonomy, stating: "[t]his amendment respects the autonomy of the Regents, provides them the opportunity that in the event of cancellation they may go into the private market and purchase a substitute general liability or automobile liability policy, or ... they [can] become part of our risk management pool."

In response, Senator Wells stated: "I think that's probably fine, because I think the Regents probably would prefer to be maintaining their own insurance." Accordingly, Senator Wells, the sponsor of the bill, recognized the autonomy of the University as well. *Concerning the Liability of Public Entities, Officials, and Employees,*

the Attorney General demonstrates this very understanding. As we have pointed out, section 24–10–112(2) allows the governing body of an instrumentality of the state to compromise or settle a claim in such manner as it sees fit.

Under the MOU, when the Attorney General receives a notice of claim against the University of Colorado, he or she transmits it to the Office of University Counsel and sends instructions to the claimant that all future correspondence should be with the Office of University Counsel. Likewise, as demonstrated by the record in the case before us, when the Board of Regents receives notices of claim it transmits them to the Office of University Counsel. By virtue of the MOU, the Office of University Counsel is the designated agent of the Regents and the Attorney General, its statutory counsel, for action on GIA claims.

In *Brock*, we recognized that actual notice of the notice of claim to the attorney for the public entity within the 180–day period satisfies the section 24–10–109(3) filing requirement. *Brock*, 955 P.2d at 1045. We must give effect to the legislative purposes of the GIA. *See Woodsmall v. Reg'l Transp. Dist.*, 800 P.2d 63 (Colo.1990). An essential purpose of the notice requirement is to "permit a public entity to conduct a prompt investigation of the claim and thereby remedy a dangerous condition, to make adequate fiscal arrangements to meet any potential liability, and to prepare a defense to the claim." *Id.* at 68. We reiterated this purpose in *Brock*. *See Brock*, 955 P.2d at 1041.

Booth filed her timely notice of claim with the governing body of the University, the Board of Regents, which promptly transmitted it to the Office of University Counsel, designated agent for acting on GIA claims against the University. The University had the opportunity to conduct a prompt investigation of the claim and remedy the alleged dangerous condition, make adequate fiscal arrangements to meet any potential liability,

and/or prepare a defense to the claim, as section 24–10–109(3) contemplates.[12]

### III.

We hold that a claimant may file her GIA notice of claim against the University of Colorado, in compliance with section 24–10–109(3), with the Board of Regents as the University's governing body, or with the Attorney General, its statutory counsel. We affirm the judgment of the court of appeals.

---

*and Making an Appropriation in Connection Therewith: Hearing on H.B. 1001 before the Senate on Second Reading,* 55th Gen. Assem., 1st Ex.Sess. (Colo.1985).

**12.** To the extent our opinion diverges from *Schmidt v. Harken,* 42 P.3d 34 (Colo.App.2001), we overrule that case.