The CITY AND COUNTY OF DENVER,
Colorado d/b/a The Denver International
Airport, a Colorado political subdivision,
Petitioner

v.

Terri CRANDALL and Joann Hubbard,
individually, and on behalf of all oth-
ers similarly situated, Respondents.

No. 06SC424.

Supreme Court of Colorado,
En Banc.

June 25, 2007.

Hall & Evans, LLC, Chris A. Mattison, Andrew D. Ringel, Andrew J. Carafelli, Denver, Colorado, Attorneys for Petitioner.

Fognani & Faught, PLLC, John D. Fognani, Brian D. Gonzales, Kristina I. Mattson, Denver, Colorado, Attorneys for Respondents.

Justice HOBBS delivered the Opinion of the Court.

We accepted certiorari in *Crandall v. City & County of Denver*, 143 P.3d 1105 (Colo. App.2006), to determine whether the court of appeals erred in upholding the trial court's judgment denying the City and County of Denver's ("Denver's") C.R.C.P. 12(b)(1) motion to dismiss this tort action for failure to provide a timely notice of claim pursuant to section 24–10–109(1), C.R.S. (2006), of the Colorado Governmental Immunity Act ("CGIA").[1]

---

1. Denver presented the following issues for review:

    1. Whether the court of appeals erred in holding that recurring symptoms from alleged environmental exposures were separate and distinct injuries for the purposes of the Colorado Governmental Immunity Act 180–day notice requirement for subject matter jurisdiction.

    2. Whether the court of appeals erred in concluding that respondent's notice of claim was

Two United Airlines employees who worked as customer service representatives at Concourse B of Denver International Airport ("DIA") since its opening in 1995, Terri Crandall ("Crandall") and Joann Hubbard ("Hubbard"), filed a complaint against Denver in July of 2003, each claiming personal injury and damages due to environmental contamination at DIA that included noxious odors, sewage leaks, and mold contamination. Their complaint also sought certification of a class composed of "all persons exposed to the environmental conditions at the airport from 1995 to the present."

In accordance with our decision in *Trinity Broadcasting of Denver, Inc. v. City of Westminster*, 848 P.2d 916 (Colo.1993), the trial court held an evidentiary hearing to determine whether it had subject matter jurisdiction over the action. In its findings of fact, the trial court determined that Crandall and Hubbard had experienced symptoms such as dermatitis, headaches, nausea, shortness of breath, bronchitis, and pneumonia, commencing in 1995 and continuing through the time of their notice of claim in 2002. During periods when they were being treated for medical conditions and were away from Concourse B their symptoms abated, but when they returned to work at Concourse B their symptoms recurred. By 1999 Crandall and Hubbard had each discovered and attributed their injury to environmental contamination at DIA, but they did not file their joint notice of claim with Denver until August 2, 2002.

At the C.R.C.P. 12(b)(1) hearing both parties contended that our decision in *Gallagher v. Board of Trustees for University of Northern Colorado*, 54 P.3d 386 (Colo.2002), favored their position. In *Gallagher* we held that the continuing violation doctrine cannot be used to remedy an untimely filing under the CGIA. *Id.* at 392–93. But, the trial court construed *Gallagher* in favor of the claimants' position that (1) our ruling in *Gallagher* barred only those claims for injuries that occurred outside of the CGIA 180–day period and (2) each time the claimants' symptoms

recurred constituted a separate injury under the CGIA.

Thus, the trial court refused to dismiss the complaint. Because the claimants' symptoms had recurred within the 180–day period applicable to the 2002 notice of claim, the trial court reasoned that every time the symptoms recurred constituted a separate injury for CGIA purposes. The court of appeals agreed. We disagree.

We hold that the complaint, the C.R.C.P. 12(b)(1) evidentiary hearing, and the trial court's findings of fact in this case demonstrate that each claimant, by 1999, discovered her injury attributable to general environmental contamination occurring at DIA's Concourse B. Crandall and Hubbard did not file their joint notice of claim with Denver until August of 2002, well beyond the 180–day CGIA requirement. At the *Trinity* hearing, for the purpose of establishing subject matter jurisdiction, they did not identify a separate and discrete occurrence that resulted in an injury they discovered and for which they made a claim within the 180–day notice period.[2] The trial court should have granted Denver's C.R.C.P. 12(b)(1) motion to dismiss.

Accordingly, we reverse the judgment of the court of appeals and remand this case to that court with directions to return this case to the trial court for dismissal of this action.

**I.**

Both Crandall and Hubbard have been employed at DIA as customer service representatives for United Airlines since DIA opened in 1995. Crandall continues her employment at DIA to date; Hubbard ceased her employment there as of February 2002. Both Crandall and Hubbard worked primarily at the boarding gates in Concourse B of DIA; they also worked in the "Red Carpet Club" rooms of Concourse B.

There have been a number of environmental problems at DIA since it opened. For instance, there have been sewage problems

---

sufficient as to unnamed potential class members under Colorado's Governmental Immunity Act.

2. Our holding might be different if Crandall and Hubbard identified injuries that they discovered within the 180–day notice period resulting from separate accidents, but they did not.

from backed-up toilets; clogged floor drains; areas of mold growth where water leaks; and the spillage or leakage of various chemicals. Denver has adequately remedied most of the environmental problems. Nevertheless, the DIA maintenance department continues to receive about one noxious odor call per week from Concourse B; when maintenance personnel respond, they typically cannot locate the smell or it has dissipated before they can detect it.

An investigation report in May of 1999 commissioned by United Airlines for its DIA facilities reported a three-year history of poor air quality and mold growth:

> The Denver facility has had a history of indoor air quality concerns for at least the last three years. The main area of concern is the basement training operations. This basement area has a history of water leaks and mold growth on the walls and possibly under the carpeting. The area also has a history of at least one flood.... During the past 18 months, moldy drywall has been removed and replaced. However, employees are still reporting symptoms. In order to determine whether mold is still a problem in this area, air testing was done on 2/28/99.

Testing in May of 2002 commissioned by Denver confirmed mold contamination at various locations in Concourse B's basement level; E-coli in basement level carpet; raw sewage in utility tunnels and at certain gates; bluish colored sediment oozing from the tarmac near certain gates; and sewer gas entering into elevator shafts and the Red Carpet rooms.

By at least 1999, Crandall and Hubbard each attributed the serious health problems she suffered to environmental conditions at DIA. Crandall claims to have had pneumonia on at least four occasions, a chronic and recurring pneumonitis condition, chronic bronchitis, and chronic pulmonary disease. She was on medical leave from work between May 2001 and April 2002 due to pneumonia.

In May of 2002, she filed a worker's compensation claim with United Airlines in which she listed November 1999 as her date of injury attributable to environmental conditions at DIA.

Hubbard has suffered a chronic recurring dermatitis condition that periodically causes her skin to break out, a variety of upper respiratory problems, dizziness, tingling of the fingers, earaches, headaches, nausea, and she has fainted at least once. When Hubbard had to leave work for eleven weeks in 1999 for a surgery that was unrelated to the environmental conditions at DIA, her symptoms subsided. Her problems recurred shortly after she returned to work in 2000.

Hubbard stopped working at DIA in February 2002 after she suffered what she calls "a final blowout" in which she had a skin breakout so severe that she had to leave work and seek medical attention. Since leaving work her symptoms have almost disappeared, but when she has had to enter Concourse B for personal travel she claims to have suffered an immediate onset of at least one of her prior symptoms. Hubbard has known that her symptoms could be attributed to the environmental conditions at DIA since at least 1999, when she asked her doctors if they could be a contributing factor to her ill health.

Despite having endured recurring skin and respiratory problems since 1995 and attributing those conditions to environmental problems at DIA since 1999, Crandall and Hubbard did not file their CGIA notice of claim with Denver until August 2, 2002.

In response to the notice of claim, Denver invoked CGIA immunity for failure to file a timely notice. On July 2, 2003, Crandall and Hubbard filed their lawsuit for injury and damages against Denver alleging negligence, negligence per se, nuisance, common law premises liability and/or violation of section 13–21–115, C.R.S. (2006) (actions against landowners), and battery. They also sought an injunction to abate contamination at DIA.[3]

---

**3.** Crandall and Hubbard sued Denver individually and in a class action capacity "on behalf of all others similarly situated." Denver asserts that this aspect of filing fails to meet CGIA notice requirements under section 24–10–109, C.R.S.

(2006), despite a court of appeals ruling to the contrary. We decline to reach the merits of this issue in light of our dismissal ruling, because no claimant remains to pursue this action on behalf of the alleged class.

Under C.R.C.P. 12(b)(1) and 12(b)(5), Denver moved to dismiss the complaint on several grounds, including that the trial court lacked subject matter jurisdiction over the claims because they were filed more than 180 days beyond the time Crandall and Hubbard each discovered her injury and the date they gave their CGIA notice to Denver. § 24–10–109(1).

After allowing document and deposition discovery on the jurisdictional issue, the trial court conducted a *Trinity* hearing on Denver's C.R.C.P. 12(b)(1) motion. At the hearing, Crandall and Hubbard conceded that the CGIA prevented them from asserting claims arising from injuries that they suffered and discovered more than 180 days prior to giving their CGIA notice to Denver. The 180–day notice period preceding their August 2, 2002 notice of claim would have begun on February 2, 2002.

Nevertheless, Crandall and Hubbard contended in the trial court that they had experienced symptoms from the environmental conditions within the 180–day notice period and these symptoms constituted separate injuries for CGIA purposes. Summarizing this theory, Crandall and Hubbard's attorney argued:

> What we would submit, your honor, is that the plaintiffs don't have a single injury. The plaintiffs, as I said before, get sick when they go to DIA, and particularly to the B Concourse, and they get well when they go away ... [E]very time they go out there [ to DIA] and suffer an illness, go home and get well, take the weekend off and feel good, go back to work and feel crummy, that's a new injury.

Crandall and Hubbard both testified that they began to experience their symptoms soon after they commenced work in Concourse B in 1995. The other two witnesses at the *Trinity* hearing were two DIA maintenance personnel who testified to ongoing environmental problems at DIA after the airport opened in 1995. They testified that most of these problems had been abated, but DIA continues to receive odor complaints at Concourse B on a weekly basis which, when investigated, have not resulted in identifying a specific source.

At the *Trinity* hearing, Crandall and Hubbard did not present expert medical opinion. They posited subject matter jurisdiction on their description of recurring symptoms they had experienced and visits to doctors' offices.

The trial court denied Denver's C.R.C.P. 12(b)(1) motion to dismiss. Its findings of fact include findings that both Crandall and Hubbard experienced their symptoms when they began working at Concourse B in 1995 and, at least as early as 1999, had attributed these symptoms to environmental conditions at Concourse B. In its conclusions of law, citing our decision in *Gallagher*, 54 P.3d at 391, the trial court agreed that Crandall and Hubbard bore the burden of proving subject matter jurisdiction under the CGIA, that the 180–day time limit of section 24–10–109(1) must be strictly applied, and that the continuing violation doctrine cannot be used to remedy an untimely filing.

Nevertheless, the trial court's legal conclusion agreed with Crandall and Hubbard that each time a symptom recurred it was a separate injury within the meaning of the CGIA and notice to Denver was timely as to injuries occurring forward from February 2, 2002:

> Under the facts of this case, the court concludes that whether or not the plaintiffs' reoccurring symptoms could be traced to one continuous condition, each time a symptom occurred it was an injury within the meaning of the GIA because the reoccurring symptoms resulted from varying and reoccurring environmental conditions at different locations on Concourse B.

In upholding the trial court's denial of Denver's C.R.C.P. 12(b)(1) motion to dismiss, the court of appeals agreed with this legal conclusion.[4] *Crandall*, 143 P.3d at 1110.

We disagree that Crandall and Hubbard met their burden to prove subject matter jurisdiction over this action.

---

**4.** The court of appeals mistakenly deferred to this conclusion of law as if it were a finding of fact in which the "varying and reoccurring environmen-

tal conditions" were separate and discrete injuries. *Crandall*, 143 P.3d at 1110.

## II.

We hold that the complaint, the C.R.C.P. 12(b)(1) evidentiary hearing, and the trial court's findings of fact in this case demonstrate that each claimant, by 1999, discovered her injury attributable to general environmental contamination occurring at DIA's Concourse B. Crandall and Hubbard did not file their joint notice of claim with Denver until August of 2002, well beyond the 180-day CGIA requirement. At the *Trinity* hearing, for the purpose of establishing subject matter jurisdiction, they did not identify a separate and discrete occurrence that resulted in an injury they discovered and for which they made a claim within the 180-day notice period. The trial court should have granted Denver's C.R.C.P. 12(b)(1) motion to dismiss.

## A.

### Standard of Review CGIA Requirement of Timely Notice of Claim

■ In interpreting the CGIA, our goal is to give effect to the intent of the General Assembly. *Middleton v. Hartman,* 45 P.3d 721, 730 (Colo.2002). The purpose of the timely notice provision, section 24–10–109(1), is to recognize and insure that the governing body or its attorney be directly involved, advised, and notified of potential litigation. *Univ. of Colo. v. Booth,* 78 P.3d 1098, 1100 (Colo.2003).

■ The General Assembly designed the CGIA notice requirements with important policies in mind. Timely notice permits the public entity to conduct an investigation of the claim and abate a dangerous condition, to make fiscal arrangements for satisfaction of potential liability and settle meritorious cases, and to prepare defenses if it views the claim to be unmeritorious. *City of Lafayette v. Barrack,* 847 P.2d 136, 139 (Colo.1993).

The CGIA provides for a timely notice of claim, as follows:

Any person claiming to have suffered an injury by a public entity or by an employee

thereof while in the course of such employment, whether or not by a willful and wanton act or omission, shall file a written notice as provided in this section *within one hundred eighty days after the date of the discovery of the injury,* regardless of whether the person then knew all of the elements of a claim or of a cause of action for such injury. *Compliance with the provisions of this section shall be a jurisdictional prerequisite* to any action brought under the provisions of this article, and failure of compliance shall forever bar any such action.

§ 24–10–109(1) (emphasis added).

The CGIA definition of "injury" includes injury to a person, as follows:

*"Injury" means* death, *injury to a person,* damage to or loss of property, of whatsoever kind, which, if inflicted by a private person, would lie in tort or could lie in tort regardless of whether that may be the type of action or the form of relief chosen by a claimant.

§ 24–10–103(2), C.R.S. (2006) (emphasis added).

■ A claimant must give notice of claim to the governmental entity no more than 180 days after he or she discovers or should have discovered an injury. *Gallagher,* 54 P.3d at 388; *Trinity,* 848 P.2d at 927. Absent compliance with the 180-day notice requirement, governmental immunity bars suit against the public entity[5] because a trial court lacks subject matter jurisdiction over the complaint seeking relief. § 24–10–109(1); *Tidwell ex rel. Tidwell v. City & County of Denver,* 83 P.3d 75, 81 (Colo.2003); *Trinity,* 848 P.2d at 923.

■ The trial court is the pre-trial fact-finder to determine whether notice was timely filed. *Trinity,* 848 P.2d at 924. In a *Trinity* hearing on a C.R.C.P. 12(b)(1) motion to dismiss, the plaintiff must carry the burden of proving jurisdictional facts adequate to support subject matter jurisdiction. *Gallagher,* 54 P.3d at 391.

---

5. In contrast to the jurisdictional 180-day filing requirement, the adequacy of the notice's contents is subject to a substantial compliance standard under section 24–10–109(2), C.R.S. (2006). *Brock v. Nyland,* 955 P.2d 1037, 1041 (Colo. 1998).

■ Whether a claimant has satisfied the CGIA timely notice requirement is a mixed question of law and fact. *Trinity,* 848 P.2d at 924–25. We uphold a trial court's findings of jurisdictional facts unless they are clearly erroneous. *Mesa County Valley Sch. Dist. No. 51 v. Kelsey,* 8 P.3d 1200, 1204 (Colo.2000). We review a trial or appellate court's legal conclusion de novo. *Id.* at 1206. Where, as here, the jurisdictional facts in evidence at the *Trinity* hearing are undisputed, the issue is one of law. *Springer v. City & County of Denver,* 13 P.3d 794, 798 (Colo. 2000). Denial of a governmental entity's C.R.C.P. 12(b)(1) motion alleging lack of CGIA subject matter jurisdiction is subject to interlocutory appeal. *See City of Lakewood v. Brace,* 919 P.2d 231, 241 (Colo.1996).

### B.

### Application to this Case

■ In support of subject matter jurisdiction, Crandall and Hubbard equate their recurring symptoms from exposure to DIA Concourse B environmental conditions with the existence of separate and discrete injuries for which they filed a timely notice of claim within the CGIA's 180–day notice provision.

In making this argument, they seek to rely on a statement in our *Gallagher* opinion, which they contend stands for the proposition that injuries occurring within the 180–day claim period may be utilized to establish subject matter jurisdiction, even though injuries discovered before that period may not be utilized to establish subject matter jurisdiction: "If the court finds that acts claimed by Gallagher as retaliatory conduct occurred outside the 180–day limit, those acts will therefore be barred from the whistleblower claim." *Gallagher,* 54 P.3d at 393.[6]

Here, Crandall and Hubbard claim subject matter jurisdiction exists because their symptoms occurred within their joint 180–day notice of claim period. Because we reject the argument that each new outbreak of

symptoms is a separate and distinct injury, and they did not identify their allegation of separate injuries in any other manner, Crandall and Hubbard are left with the theory that the continuing occurrence of bad air at DIA caused them respiratory and skin problems. Based on the uncontested evidence before the trial court at the *Trinity* hearing, Crandall and Hubbard each discovered her injury and attributed it to the environmental conditions at DIA as early as 1999, but did not file their joint notice of claim until August 2, 2002.

Our full discussion in *Gallagher,* 54 P.3d at 392–93, points out that the federal courts developed the continuing violation doctrine as an equitable method to avoid dismissing discrimination cases for failure to comply with Title VII's filing deadline. *See Nat'l R.R. Passenger Corp. v. Morgan,* 536 U.S. 101, 117, 122 S.Ct. 2061, 153 L.Ed.2d 106 (2002). We explained that the continuing violation doctrine does not apply to claims brought under CGIA notice requirements because section 24–10–109(1) is a non-claim statute. *Gallagher,* 54 P.3d at 393.

■ Unlike under ordinary statutes of limitations, a plaintiff cannot invoke equitable defenses such as waiver, tolling, or estoppel to overcome the CGIA 180–day notice of claim provision. *Kelsey,* 8 P.3d at 1206. If a claimant fails to comply, a court must dismiss the matter for lack of subject matter jurisdiction. *Id.*

Among our prior decisions, *Trinity* itself is the case most parallel to this case, and it requires a conclusion that Crandall and Hubbard did not bear their burden of establishing subject matter jurisdiction. *Trinity's* claims were based on a continuing trespass caused by the migration of water from Westminster's water tanks or water mains to Trinity's property, causing structural damage to Trinity's building that continued to manifest itself. *Trinity,* 848 P.2d at 922. We held that the 180–day CGIA notice period commenced when Trinity knew or should have known that the structural damage to

---

6. Thus, in *Gallagher,* what we left open for the trial court to address on remand as a basis for subject matter jurisdiction was the possible occurrence of a separate identifiable act of retaliatory conduct by the employer that caused an injury Gallagher discovered and for which he made a claim within the 180–day notice of claim period.

the building resulted from an abnormal amount of water in ground soil. *Id.* at 927. Untimely filing of the notice would not be excused.

> The Governmental Immunity Act does not permit an injured party to ignore evidence which would cause a reasonable person to know that he or she has been injured by the tortious conduct of another. The Act's notice period places a burden on the injured party to determine the cause of the injury, to ascertain whether a governmental entity or public employee is the cause, and to notify the governmental entity within 180 days from the time when the injury is discovered.

*Id.* at 926–27.

At the *Trinity* hearing in this case, Crandall and Hubbard did not establish that a separate and discrete occurrence caused them injury they discovered and for which they made a claim within the 180–day notice period, only that they suffered recurring symptoms from the continuous general contamination condition existing at various locations in DIA's Concourse B. The trial court equated the claimants' anecdotal testimony of recurring symptoms with the existence of separate and discrete injuries for CGIA purposes. It held that our decision in *Gallagher* required only the exclusion of symptoms that were outside the 180–day notice period, and allowed the lawsuit to continue based on symptoms occurring after February 2, 2002:

> Under the facts of this case, the court concludes that *whether or not the plaintiffs' reoccurring symptoms could be traced to one continuous condition, each time a symptom reoccurred it was an injury* within the meaning of the GIA because the reoccurring symptoms resulted *from varying and reoccurring environmental conditions at different locations on Concourse B.*

(Emphasis added). The court of appeals agreed.

We conclude that the trial court and the court of appeals misapplied our ruling in *Gallagher* and ignored our ruling in *Trinity.*

*Trinity* involved continuing symptoms of water-caused damage analogous to the continuing symptoms of general contamination-caused damage that Crandall and Hubbard allege in this case.

██ As our discussions in *Trinity* and in *Gallagher* conclude, the CGIA requires timely notice of claim. The CGIA notice of claim provision is both a condition precedent and a jurisdictional prerequisite to suit under the CGIA, must be strictly applied, and failure to comply with it is an absolute bar to suit. *Trinity*, 848 P.2d at 927; *E. Lakewood Sanitation Dist. v. Dist. Court*, 842 P.2d 233, 236 (Colo.1992).

To enforce the recurring symptom theory Crandall and Hubbard advance would allow extensive delay in the filing of claims, as this case demonstrates. Allowing such delay would defeat the CGIA notice of claim purposes that include investigating and abating a dangerous condition, settling a meritorious claim, preparing a defense to a perceived unmeritorious claim, and limiting the government's fiscal exposure to potential liability and the payment of damages. *Jefferson County Health Servs. Ass'n v. Feeney*, 974 P.2d 1001, 1003 (Colo.1998).

██ The recurring symptom theory ignores CGIA sections 24–10–114(1)(a) & (b), C.R.S. (2006), which limit damages for an "occurrence" to one hundred fifty thousand dollars per person and, when two or more persons are injured, imposes a six hundred thousand dollar cap per occurrence. *Lee v. Colo. Dept. of Health*, 718 P.2d 221, 225 (Colo.1986). An occurrence is "an accident, event, or continuing condition that results in personal injury." [7] *Black's Law Dictionary*, 1107 (7th ed.1999). The CGIA is a non-claim statute that does not recognize tolling for those occurrences that are continuous in nature. *Gallagher*, 54 P.3d at 393.

The trial court's conclusion of law adopting the recurring symptom theory equates an individual's reaction to an ongoing environmental condition, reflected in her symptoms,

---

**7.** Many liability policies specifically include repeated exposure to substantially the same general harmful conditions when they define occur-

rence. *Hoang v. Assurance Co. of Am.*, 149 P.3d 798, 802 (Colo.2007).

with the existence of a separate and discrete compensable "occurrence." This reasoning exposes a governmental entity to huge financial claims and judgments, contrary to the express provisions of the CGIA. Indeed, the complaint in this case seeks to do just that.

Crandall and Hubbard demonstrated only that they were repeatedly exposed to the same general environmental contamination condition at DIA, an occurrence analogous to the continuous water migration in *Trinity*. For the purpose of establishing subject matter jurisdiction, they did not identify a separate and discrete occurrence that resulted in an injury they discovered and for which they made a claim within the 180–day notice period.

In sum, a personal injury plaintiff must demonstrate at the *Trinity* hearing that he or she filed a timely notice of claim within 180 days from when the claimant discovered the injury due to an occurrence. *Gallagher*, 54 P.3d at 386. The recurrence of symptoms due to an injury suffered and discovered from an occurrence outside of the 180–day period does not excuse failure to timely file under the CGIA's notice requirement. Under the facts of this case, the trial court should have dismissed the complaint for lack of subject matter jurisdiction.

### III.

Accordingly, we reverse the judgment of the court of appeals and remand this case to that court with directions to return this case to the trial court for dismissal of this action.